[No. A114629. First Dist., Div. Five. July 13, 2007.]

THE STATE OF CALIFORNIA ex rel. ROBERT HINDIN, Plaintiff and Appellant, v.
HEWLETT-PACKARD COMPANY et al., Defendants and Respondents.

## COUNSEL

O'Donnell & Associates, Pierce O'Donnell and Jack G. Cairl for Plaintiff and Appellant.

Paul D. Scott for Taxpayers Against Fraud as Amicus Curiae on behalf of Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Tom Greene, Chief Assistant Attorney General, Christopher M. Ames, Assistant Attorney General, Larry G. Raskin and Niklas A. Akers, Deputy Attorneys General, for Attorney General of the State of California as Amicus Curiae on behalf of Plaintiff and Appellant.

McKenna Long & Aldridge, Mark R. Troy, Ann G. Grimaldi and Eric S. C. Lindstrom for Defendants and Respondents.

National Chamber Litigation Center, Robin S. Conrad, Amar D. Sarwal; Fulbright & Jaworski, Peter H. Mason, Jonathan S. Franklin and Caroline M. Mew for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**NEEDHAM, J.**—The issue in this appeal concerns the proper interpretation of the statute of limitations for a qui tam action brought by appellant Robert Hindin (Hindin) under the provisions of the California False Claims Act (California Act). (Gov. Code, § 12650 et seq.) We conclude that the three-year limitations period of Government Code section 12654, subdivision (a) commences in accord with the statutory language: when the claim is discovered by the "official of the state or political subdivision charged with responsibility to act in the circumstances," not by a qui tam plaintiff such as Hindin. The statute of limitations has therefore not run in this case, and we reverse the judgment that dismissed the action as time-barred.

## I. FACTS AND PROCEDURAL HISTORY

### A. Facts Underlying This Lawsuit

Hindin worked for eight years as an engineer at respondent Hewlett-Packard Company (H-P).[1] In 1996, Hindin discovered that H-P was engaged in improper activities in connection with the marketing of defective medical devices, such as cardiac defibrillators, electrodes, pulse oximeters, ultrasound imaging equipment, and equipment for monitoring the administration of anesthetics.

Hindin brought to the attention of his supervisors and ultimately the president of H-P the fact that these medical devices were defective and unsafe. H-P did not take action to stop marketing the defective devices, and instead subjected Hindin to threats and reprimands. Shortly after Hindin complained about the defective medical equipment, a concealed videocamera was secretly installed above his desk. Hindin ultimately brought the defects in these medical devices to the attention of the federal Food and Drug Administration (FDA) for corrective action. The FDA investigated, determined that Hindin's allegations were valid, and ordered H-P to take corrective action. Subsequently, H-P continued to harass Hindin, retaliated against him, and ultimately forced him out of his employment at H-P after he filed a lawsuit against H-P in federal court.

### B. Litigation History

#### 1. The Federal Action

In 1997, Hindin filed, under seal, a lawsuit against H-P in federal district court in Massachusetts. This federal action asserted "qui tam"[2] or whistleblower claims, alleging that H-P had submitted false or fraudulent claims to the federal government regarding the safety of its medical devices, in violation of the federal False Claims Act (the Federal Act). (31 U.S.C. § 3729 et seq.) In July 2002, the United States formally intervened in the

---

[1] Another respondent is Agilent Technologies, Inc., which subsequently acquired H-P's medical devices business; for the sake of clarity we refer to both entities as H-P.

[2] "Qui tam" is a shortened phrase based on the first two words of an old Latin tag, sometimes quoted in full as "qui tam pro domino rege quam pro se ipso in hac parte sequitur," which originally meant that the plaintiff was one " ' "who pursues this action on our Lord the King's behalf as well as his own." ' " (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 797, fn. 1 [107 Cal.Rptr.2d 710], italics omitted, quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 768, fn. 1 [146 L.Ed.2d 836, 120 S.Ct. 1858].) Nowadays the state or federal government is the sovereign in whose name the action is brought.

federal action, and the complaint was unsealed. The government ultimately settled the case against H-P for $7 million, apparently over Hindin's objections.

### 2. *The State Action*

In March 2002, before the settlement of the Federal Act lawsuit, Hindin filed the present lawsuit in state court in San Francisco, under the terms of the California Act (Gov. Code, § 12650 et seq.).[3] The lawsuit alleges that H-P submitted false claims to the State of California regarding the marketing and sale of medical devices, including Medi-Cal reimbursement claims, allegedly causing the loss of hundreds of millions of dollars to the state, in violation of the provisions of the California Act barring false claims. The California Attorney General filed a formal notice declining to intervene in the lawsuit.

After H-P answered the second amended complaint, H-P filed a motion for judgment on the pleadings, asserting that the state action was barred by the limitations period set forth in section 12654, subdivision (a). Hindin opposed the motion. After a hearing, the trial court granted H-P's motion and entered a judgment of dismissal.

This appeal followed. Despite declining to intervene in the case, the Attorney General has filed a brief in this appeal as an amicus curiae, urging reversal of the trial court's ruling.

## II. *DISCUSSION*

### A. *Standard of Review*

Hindin's appeal raises purely legal issues of statutory interpretation. We therefore review the trial court's ruling de novo. (*State of California ex rel. Nee v. Unumprovident Corp.* (2006) 140 Cal.App.4th 442, 445 [44 Cal.Rptr.3d 491]; *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582 [48 Cal.Rptr.3d 340] (*Ailanto*); *Redevelopment Agency v. County of Los Angeles* (1999) 75 Cal.App.4th 68, 74 [89 Cal.Rptr.2d 10].)

### B. *Background Regarding the California Act*

The California Act, set forth in sections 12650 through 12655, is intended to " 'supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities.' " (*American Contract Services v. Allied Mold & Die, Inc.* (2001) 94 Cal.App.4th 854, 858 [114 Cal.Rptr.2d 773]; see *Rothschild v. Tyco Internat. (US), Inc.* (2000) 83 Cal.App.4th 488, 494 [99 Cal.Rptr.2d 721].) In general, the California Act permits a governmental agency, or a qui tam plaintiff bringing an action on behalf of the governmental agency, to recover civil penalties and

---

[3] Unless otherwise indicated, all further statutory references are to the Government Code.

damages from any person who, for example, knowingly presents to the state or one of its political subdivisions a false claim for payment or approval. (§ 12651, subd. (a)(1).)[4] The California Act was patterned in part after the Federal Act. (See *Rothschild, supra,* at p. 494.)

■ Section 12652 sets forth three ways in which a lawsuit under the California Act may proceed. First, the *Attorney General* "shall diligently investigate" false claims involving state funds and may bring an action against violators. (§ 12652, subd. (a)(1).) Second, the *prosecuting authority of a political subdivision* "shall diligently investigate" false claims involving political subdivision funds and may bring an action against violators. (§ 12652, subd. (b)(1).) Third, a *private person* may bring an action, on behalf of himself as well as the state or political subdivision. (§ 12652, subd. (c)(1).) The private party is referred to as the qui tam plaintiff. (*Ibid.*)

■ Where, as here, a qui tam plaintiff has initiated the lawsuit, the complaint is sealed until the Attorney General or political subdivision decides whether to intervene and proceed with the case. (§ 12652, subd. (c)(2).) Specifically, the qui tam plaintiff serves the Attorney General with a copy of the complaint, along with a written disclosure of material evidence and information in support of his contentions. (§ 12652, subd. (c)(3).) If the matter involves only state funds, the Attorney General decides whether to intervene and proceed with the action. If the matter involves political subdivision funds, the Attorney General forwards a copy of the complaint and evidence to the political subdivision, which decides whether to intervene and proceed with the action. (§ 12652, subd. (c)(4), (7), (8).) If the Attorney General or political subdivision, as applicable, declines to intervene, the complaint is unsealed and the qui tam plaintiff may conduct the action. (§ 12652, subd. (c)(7)(D)(ii), (8)(D)(iii).) The complaint is then served on the defendant. (§ 12652, subd. (c)(9).) The qui tam plaintiff is entitled to a percentage of any recovery obtained in the litigation. (§ 12652, subd. (g)(2)–(5).)

### C. *The Statute's Plain Language Indicates the Action Is Not Barred*

The relevant statute of limitations for Hindin's claim under the California Act is found in section 12654, subdivision (a), which provides: "A civil action under Section 12652 may not be filed more than three years after

---

[4] A "claim," for purposes of the California Act, includes "any request or demand for money, property, or services made to any employee, officer, or agent of the state or of any political subdivision . . . ." (§ 12650, subd. (b)(1).) A political subdivision includes a city, county, tax, or assessment district, or "other legally authorized local governmental entity with jurisdictional boundaries." (§ 12650, subd. (b)(3).)

the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances or, in any event, no more than 10 years after the date on which the violation of Section 12651 is committed."

H-P contends, and the trial court ruled, that this action was barred under the three-year rule in section 12654, measured from "discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances." H-P maintains that Hindin himself is "the official of the state or political subdivision charged with responsibility to act in the circumstances" and that Hindin obviously knew the relevant facts more than three years before he filed this action. By contrast, Hindin contends the action is not barred because he is only a private individual, and not "the official of the state or political subdivision charged with responsibility to act in the circumstances."

■ In determining what the Legislature intended in section 12654, subdivision (a), we must first look to the words of the statute "because they generally provide the most reliable indicator of legislative intent." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) If the statutory language is clear and unambiguous, our inquiry ends: "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215 [69 Cal.Rptr.2d 615, 947 P.2d 808]; see *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539]; *Ailanto, supra,* 142 Cal.App.4th at p. 582.)

In reading and interpreting statutory provisions, we are mindful that the words are to be given their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299] (*Lungren*).) Only when the statute's language is ambiguous—susceptible of more than one reasonable interpretation—may the court turn to extrinsic aids to assist in interpretation. (*People v. Jefferson* (1999) 21 Cal.4th 86, 94 [86 Cal.Rptr.2d 893, 980 P.2d 441] (*Jefferson*).)

The plain and commonsense meaning of the relevant words in section 12654, "the *official* of the state or political subdivision charged with responsibility to act in the circumstances" (italics added), refers to a public official such as the Attorney General, not a private individual such as Hindin. As an individual employee of H-P, Hindin obviously was not a public official who had any "responsibility to act in the circumstances" to safeguard public funds from the depredations of H-P. Therefore, although Hindin knew about the relevant facts more than three years before bringing this action, his knowledge did not trigger the three-year limitations period, and the action is not

barred under section 12654. This plain and commonsense reading of the statutory language contains no ambiguity, and it must govern in this case. (See *Lungren, supra,* 45 Cal.3d at p. 735.)

Our conclusion is buttressed by the fact that language in other subdivisions of section 12654 explicitly refers to "the qui tam plaintiff" as a person distinct from a state entity. Subdivision (c) of section 12654 reads: "In any action brought under Section 12652, the state, the political subdivision, *or the qui tam plaintiff* shall be required to prove all essential elements of the cause of action, including damages, by a preponderance of the evidence." (Italics added.) Thus, where the Legislature wanted to specify that a requirement applied to a "qui tam plaintiff" such as Hindin, it explicitly did so, in the very statute now under review. Section 12654 does not equate the term "qui tam plaintiff" with "the official of the state or political subdivision charged with responsibility to act in the circumstances," and in fact such a reading would be contrary to the plain meaning of the statutory language differentiating between the two.

The plain meaning of section 12654, subdivision (a) is that the three-year limitations period begins to run when a public official discovers the facts underlying the claim. Because this plain meaning governs, it is not necessary to consider extrinsic aids such as the statute's legislative history. (*Jefferson, supra,* 21 Cal.4th at p. 94.) In fact, the legislative history is consistent with the statute's plain meaning and confirms the propriety of our conclusion.[5]

D. *Legislative History*

The legislative history of section 12654 indicates that the phrase "the official of the state or political subdivision charged with responsibility to act in the circumstances" was intended to apply to a public official such as the Attorney General, who has responsibility to act to protect the public fisc from false claims.

---

[5] Our conclusion is also consistent with our opinion in *Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940 [112 Cal.Rptr.2d 329] (*Debro*). In *Debro*, we dealt with a qui tam action brought by an individual who was challenging a financing agreement involving the Oakland Raiders' use of a stadium owned by two local political subdivisions, the City of Oakland and the County of Alameda. The issue was whether the action was time-barred under section 12654 due to the "discovery" of the facts underlying the claims more than three years before the action was filed. In the course of our analysis, we noted that the plain meaning of the phrase in section 12654, "official of the . . . political subdivision charged with responsibility to act," pertained to public officials, not to the individual qui tam plaintiff who was bringing the action: "it is clear from the plain language of the statute that the 'official of the . . . political subdivision charged with responsibility to act' pertains to the responsible persons with the City of Oakland and Alameda County." (*Debro, supra,* at p. 949.) Furthermore, without deciding the issue, we observed that "the plain language of section 12654, subdivision (a), refers only to the knowledge of the responsible representative of the governmental entity." (*Debro, supra,* at p. 951 & fn. 6.)

As originally proposed, the California Act did not have its own statute of limitations. This gap was soon filled by the inclusion of a 10-year limitations period in section 12654. Because the 10-year period was apparently considered to be too long if the public officials had already been aware of the facts relevant to the alleged false claims, a three-year limitations period was added to address that circumstance. (See *Debro, supra,* 92 Cal.App.4th at p. 952.) As modified by amendment 13, the statute reads in its present form: "A civil action under Section 12652 may not be filed *more than three years after the date of discovery by the official of the state or political subdivision charged with responsibility to act in the circumstances* or, in any event, no more than 10 years after the date on which the violation of Section 12651 is committed." (§ 12654, subd. (a), italics added.)

In explaining the proposed amendment, the Legislature expressed its understanding that the three-year limitations period would be triggered by the knowledge of the public agency: "Amendment 13 would provide for a shorter statute of limitations of 3 years, instead of 10 years, when the violation is known *to the public agency* defrauded by the false claim." (Sen. Policy Com., Off. of Sen. Floor Analyses, Rep. on Assem. Bill No. 1441 (1987–1988) Reg. Sess.) Sept. 4, 1987, italics added.) In addition, the September 8, 1987 concurrence in the Senate amendments to the legislation referred to the entity or individual bringing the claim as the "initiating person," but expressly stated that amendment 13 would "[e]stablish a three year statute of limitations from date of discovery of the false claim *by the state or local official*" (Concurrence in Sen. Amends., Assem. Bill No. 1441 (1987–1988 Reg. Sess.) as amended Sept. 8, 1987, p. 2, italics added) not the "initiating person."

By contrast, nothing in the legislative history demonstrates that the knowledge of a private qui tam plaintiff was ever intended to commence the three-year limitations period. H-P refers to snippets of legislative history to argue that the intent of the amendment was to prevent "a party" from pursuing an action, after there had been knowledge of the facts underlying the claims for a period of more than three years.[6] From the fact that Hindin is "a party" to the action, H-P argues the action is barred because he knew of his claims more than three years before filing suit.

---

[6] For instance, a report prepared for the Assembly Committee on the Judiciary regarding an earlier version of the pending legislation contains a number of comments, and item number 16 out of 18 states: "This bill provides that a civil action may not be filed more than 10 years after the date on which the violation . . . is committed. A party may have known of the fraudulent conduct soon after its commission, but delays filing an action for nearly 10 years. Should there be a period within which an action must be filed after the conduct has been discovered?" (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 1441 (1987–1988 Reg. Sess.) May 6, 1987, p. 7.) We agree this comment may apparently have been one source of the amendment adding the three-year statute of limitations, but that amendment as enacted only created a statute of limitations running from discovery by "the official of the state . . . charged with responsibility to act" and not from discovery by the qui tam plaintiff.

The phrase "a party," however, never found its way into section 12654 in this regard. The statute does not provide that the knowledge of "a party" commences the limitations period, but the knowledge of "the official of the state or political subdivision charged with responsibility to act in the circumstances." It thus appears that the phrase "a party" in summaries of the legislative proceedings was used merely as a shorthand version of the much longer, cumbersome, and detailed statutory phrase, "the official of the state or political subdivision charged with responsibility to act in the circumstances."

H-P also relies on quotes taken out of context from decisions of our high court, stating that the California Act " 'deputiz[ed] citizens to join the fight to protect the public treasury' " (*State of California v. Altus Finance* (2005) 36 Cal.4th 1284, 1296 [32 Cal.Rptr.3d 498, 116 P.3d 1175] (*Altus*)) and that a qui tam plaintiff "stands in the shoes of the [government]" (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1214 [48 Cal.Rptr.3d 108, 141 P.3d 225] (*Wells*)). We have no quarrel with the quoted language as it pertains to the actual holdings of *Altus* and *Wells*; however, those holdings did not relate to the statute of limitations under section 12654, but to collateral issues such as whether a claim pertained to money issued from the state (*Altus, supra,* at pp. 1295–1296) or whether a qui tam plaintiff must file an administrative claim with the government under the Tort Claims Act before filing suit (*Wells, supra,* at p. 1214). Those cases did not consider, and are simply not relevant to, the question before us.

### E. *The Other Cases Cited by H-P Do Not Support Its Interpretation*

H-P argues that certain federal cases, and a passage from our decision in *Debro*, demonstrate that its view of section 12654 is correct. H-P is mistaken.

### 1. *Federal Cases Analyzing the Federal Act Are Inapposite*

H-P relies on federal authorities, decided under the Federal Act, in an attempt to show that Hindin's claims should be barred under the California Act. Under the Federal Act, the false claim action must be brought by the later of (1) six years after the violation, or (2) "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed." (31 U.S.C § 3731(b)(2).)

In particular, H-P refers us to *U.S. ex rel. Hyatt v. Northrop Corp.* (9th Cir. 1996) 91 F.3d 1211 (*Northrop*). There, a qui tam plaintiff filed a lawsuit nearly seven years after he became aware of the claim. (*Id.* at p. 1218.) He argued that the six-year federal statute of limitations did not bar his case,

because the limitations period was tolled until the government learned of the fraud underlying his claim, pursuant to the provision allowing suit within "3 years after [the material facts] are known or reasonably should have been known by the official of the United States charged with responsibility to act." (*Id.* at p. 1214; see 31 U.S.C. § 3731(b)(2).) The court disagreed, concluding that the three-year tolling period began when the qui tam plaintiff knew or should have known of the facts material to his claim, because he had the "responsibility to act" in bringing the lawsuit. (*Northrop, supra,* at pp. 1217–1218.) Therefore, the government's ignorance of the material facts did not, under federal law, toll the six-year limitations period. In a footnote, the court stated: "Although it may seem incongruous to hold that a *qui tam* plaintiff could be considered 'an official of the United States charged with responsibility to act,' it is not—particularly *in view of the [federal] FCA statutory scheme.*" (*Id.* at p. 1217, fn. 8, italics added.)

*Northrop* is not helpful to our analysis of section 12654, subdivision (a). *Northrop* addressed whether the six-year limitations period in the Federal Act was *tolled* by the government's ignorance of the claim. There is no corresponding provision in the California Act. Indeed, the language of the federal statute of limitations differs significantly from the language of section 12654, subdivision (a). The federal statute dictates that the limitations period begins when material facts were "known or reasonably should have been known." (31 U.S.C. § 3731(b)(2).) Section 12654, subdivision (a) states that the limitations period under the California Act begins upon "discovery." (See *Debro, supra,* 92 Cal.App.4th at p. 949 ["Because of this difference in language, we are not persuaded that the operation of the federal limitations period necessarily dictates how we should interpret section 12654, subdivision (a)."].)

Furthermore, after careful analysis of legislative history and public policy, more recent authority from another federal circuit court of appeals has disagreed with the Ninth Circuit's decision in *Northrop*, holding that the phrase "an official of the United States charged with responsibility to act" does *not* include a qui tam plaintiff. (*U.S. ex rel. Sikkenga v. Regence Bluecross* (10th Cir. 2006) 472 F.3d 702, 723–725.) Thus, not only does *Northrop* pertain to federal rather than California law, its validity even as to federal law is in dispute. H-P's resort to federal cases interpreting the language of the Federal Act is unpersuasive.

### 2. *H-P's Reliance on* Debro *Is Misplaced*

As mentioned *ante*, our decision in *Debro* indicated that the plain meaning of section 12654 requires consideration of the knowledge of the public official, not the qui tam plaintiff. We also concluded in *Debro* that federal

cases interpreting the Federal Act were unhelpful in analyzing section 12654 to the extent its language differed from that of the California Act. (See *Debro, supra*, 92 Cal.App.4th at p. 949.) Neither of these points helps H-P's position in this appeal. Nonetheless, H-P relies on a different portion of *Debro*, in which we rejected the argument that the three-year statute should begin to run only when public officials had received a copy of the plaintiff's complaint, rather than upon discovery—from whatever source—of the facts underlying a claim. (*Debro, supra*, at p. 952.) We rejected this proposition because it was not apparent from the statute, and because of the possibility that such an interpretation would allow a qui tam plaintiff to control the statute of limitations. (*Ibid.*)[7]

H-P contends that, like Debro, Hindin is arguing that the limitations period began to run when the Attorney General learned of the claims through the written disclosure that Hindin submitted. For the same reasons that *Debro* rejected Debro's arguments, H-P urges, we should reject Hindin's arguments. Under Hindin's interpretation of the statute, H-P explains, a qui tam plaintiff could wait as long as he wants before submitting his written disclosure, no matter when he first discovered the alleged wrongdoing. Then having conferred the requisite knowledge on the government, the qui tam plaintiff could wait the three years specified in section 12654, subdivision (a) before finally filing suit.

■ H-P misconstrues what we said in *Debro*. The point of the passage was that a public official could "discover[]" a claim from a variety of sources, without necessarily obtaining the qui tam plaintiff's complaint. Here, however, there is no showing that the Attorney General was aware of the claim until it received Hindin's complaint, or that it learned of the underlying facts from other sources. Its "discovery" of the claim thus occurred when the complaint was received, the three-year statute did not begin to run until then, and Hindin's action is therefore not time-barred.

---

[7] We stated: "Debro's argument is not supported by the language of section 12654, subdivision (a). Nowhere does the statute dictate that the responsible person at the political subdivision cannot be charged with inquiry notice until the qui tam plaintiff has filed his complaint and sent it to the Attorney General. Moreover, Debro's construction of the statute would result in absurdity. According to Debro's view, the time period within which a qui tam plaintiff could file a lawsuit under the California Act would start *whenever he filed his lawsuit*. This would permit the qui tam plaintiff to control the length of the limitations period, waiting as much as 10 full years after learning of the fraud before bringing suit. This is plainly not what the Legislature had in mind when drafting section 12654, subdivision (a). (Accord, *Northrop Corp., supra*, 91 F.3d at p. 1217 [rejecting identical argument under federal False Claims Act].)" (*Debro, supra*, 92 Cal.App.4th at p. 952.)

To the extent of any concern that our construction of the statute could lead some other qui tam plaintiff to attempt to manipulate the limitations period by holding back his claim, other policy considerations prevail, as we discuss next.

### F. Policy Considerations

H-P contends that public policy favors its interpretation of section 12654, because Hindin's interpretation could extend the limitations period beyond the 10-year statutory maximum,[8] encourage qui tam plaintiffs to wait to disclose their knowledge (thus increasing the injuries and losses from the wrongful conduct), and allow for stale claims. Policy arguments as to what H-P believes the Legislature should have enacted, however, do not change the plain language of the statute the Legislature did enact, or rewrite the legislative history evincing what the Legislature intended. In any event, public policy considerations overall favor Hindin in this case, not H-P.

■ The California Act is intended to reinforce public rights and enlightened public policy, by preventing the looting of the public fisc. (*Altus, supra,* 36 Cal.4th at pp. 1295–1296; *Wells, supra,* 39 Cal.4th at p. 1214.) It is an actual public official who is legally responsible for safeguarding public funds. It is also an actual public official who is politically responsible to the electorate. The statute allows private parties to *aid* the state in achieving a recovery of state assets wrongfully obtained by false claims. (*Debro, supra,* 92 Cal.App.4th at pp. 950, 952.) But it would be incongruous for the knowledge of a private individual, obtained while the individual was *not* even acting as a public official, to preclude the government from bringing a claim. In accord with the plain language of the statute, it is the knowledge of the true public official, not the qui tam plaintiff, that triggers the three-year limitations period of section 12654, subdivision (a).

Hindin's lawsuit is not time-barred.[9]

---

[8] H-P argues that, if the three-year period did not commence until the state was aware of the violation, Hindin could wait until the end of the 10-year period to inform the state. He would still have three years to file a lawsuit, but the state would either be out of time (thus losing its rights under the California Act as to the violation) or, if it too could benefit from the additional three-year period, the 10-year maximum period would become a 13-year period.

[9] In an alternative argument, Hindin contends that equitable tolling should delay the running of the statute of limitations under the California Act. We need not decide this issue, because for reasons we have explained Hindin's action is not time-barred, even without equitable tolling.

## III. *DISPOSITION*

The requests for judicial notice of the amicus curiae California Attorney General, and respondent H-P, are granted. The judgment of dismissal is reversed and remanded to the trial court for further proceedings. Costs on appeal to appellant.

Simons, Acting P. J., and Gemello, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 10, 2007, S155583. Chin, J., did not participate therein.