* On September 9, 2009, review dismissed and cause remanded to Court of Appeal, Second Appellate District, Division Three.
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 521 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 522 
OPINION
INTRODUCTION
Saul Deleon, on behalf of himself and other aggrieved employees, brought this action under the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698; PAGA) against AirTouch Cellular, doing business as Verizon Wireless (hereinafter Verizon Wireless), alleging various Labor Code violations. The trial court sustained without leave to amend the demurrer brought by Verizon Wireless ruling that Deleon's lawsuit was barred by the doctrine of res judicata to the extent Deleon seeks relief on behalf of class members who settled a prior class action against Verizon Wireless that adjudicated the same claims. While we agree with the trial court's analysis, we conclude that it abused its discretion in denying Deleon leave to amend to state claims that accrued after the date of the earlier action. Accordingly, we reverse.
 FACTUAL AND PROCEDURAL BACKGROUND
1. The earlier Evenson class action lawsuit
In 2003, Jodi Evenson filed her initial complaint as a class action under the unfair competition law (Bus. Prof. Code, § 17200; the UCL). Evenson's operative complaint alleged that Verizon Wireless made chargebacks against the commissions of salespeople in California and thereby violated Labor Code sections 201, 202, 203, 226, and 1194, among others.[1] The complaint alleged, "When a customer signs up for wireless service with VERIZON, both the salesperson who made the sale and his or her manager receive a sales commission. However, if the customer's service terminates for any reason within the first 365 days (or within 150 days for a pre-paid account), VERIZON forces the salesperson and the manager to pay back their entire sales commission to VERIZON. This is known as a `chargeback'" or "adjustment." (Original underscoring.) The gravamen of the Evenson complaint was that by virtue of the chargebacks, the plaintiff employees did not receive overtime pay or accurate wage statements. On behalf of two classes of commissioned employees in California, Evenson sought compensatory damages, restitution of wages, injunctive relief, waiting time and other penalties, and interest and attorney fees.[2] *Page 524 
In early 2006, the parties in Evenson reached a settlement. Thereunder, the trial court certified a class solely for settlement purposes comprised of "[a]ll individuals who worked for Verizon Wireless as an hourly commissioned sales employee in the State of California (whether in a retail location or in a call center) during the Class Period and who were subject at any time during the Class Period to Verizon Wireless policy providing that sales commission advances are not earned if the customer cancelled service for any reason within 365 days of the original sale (150 days of sale for a pre-paid account)." The class period ran from March 6, 1999, to April 1, 2006.
According to the stipulation, all class members who did not opt out of the settlement class released and discharged Verizon Wireless from all "Released Claims." "Released Claims" were defined by the settlement to include, among other things, all claims, actions, suits, causes of action, damages whenever incurred, liabilities of any nature whatsoever, including penalties arising out of "any conduct, events, or transactions occurring during the class period" that were alleged or which were required to have been alleged in the litigation under the doctrine of compulsory joinder in the Evenson suit. In exchange for this release, Verizon Wireless agreed to pay a maximum settlement of $5.2 million. Deleon and a small number of class members opted out of the Evenson settlement.
2. The instant Deleon lawsuit
Deleon filed his representative lawsuit in February 2005 on behalf of a group of "aggrieved employees," and himself and the other employees who had opted out of the settlement class. After the Evenson settlement, Deleon filed his third amended and operative complaint. Unlike Evenson, Deleon's complaint is brought under PAGA. Just as in Evenson, however, Deleon's complaint alleges that Verizon Wireless improperly made chargebacks of aggrieved employees' commissions, which chargebacks "resulted in an under-payment of overtime" wages and "resulted in Plaintiff and aggrieved employees being paid a wage lower than agreed upon" in violation of the Labor Code. Similar to Evenson, Deleon seeks penalties for unpaid hours worked, failure to pay reimbursements and overtime, waiting time penalties, and wage-statement violations, among other things, pursuant to sections 201 through 204, 223, 226, 510, 1194, and 1198, nearly the same provisions relied on in Evenson. The Deleon complaint acknowledges the similarity of its *Page 525 
claims to those claims settled in Evenson, but notes the Evenson settlement had not made any PAGA allegations and "hence Plaintiff and the aggrieved employees are entitled to recover the civil penalties available under PAGA."
Verizon Wireless demurred to Deleon's operative complaint on the ground that the claims are barred by the doctrine of res judicata because the Deleon complaint seeks relief on behalf of the Evenson settlement class who had already released these claims against Verizon Wireless.
Deleon opposed the motion "for one simple reason," namely, that the element of privity was lacking. According to Deleon, the state or the Attorney General is the "real party in interest" in a PAGA action, not the employees on whose behalf the PAGA action is brought. Hence, the question is not whether he as private attorney general is in privity with the Evenson plaintiffs, but whether the state is in privity with the Evenson plaintiffs, Deleon reasoned. Also, Deleon argued that the Evenson plaintiffs had never exhausted the administrative prerequisites to sue under PAGA, and so unlike he, they were never authorized to pursue their action on behalf of the state.
The trial court sustained the demurrer without leave to amend. The trial court ruled, inter alia, that the "aggrieved employees" Deleon seeks to represent were the same employees who had released their claims in settlement of the Evenson action. Deleon's timely appeal followed.
 CONTENTIONS
Deleon contends that the trial court abused its discretion in sustaining the demurrer to the third amended complaint.
 DISCUSSION
1. Standard of review
On appeal from the sustaining of a demurrer, "`"`[w]e treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citations.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been *Page 526 
no abuse of discretion and we affirm. [Citations.]"'" (Pollock v. University of Southern California (2003)112 Cal.App.4th 1416, 1424 [6 Cal.Rptr.3d 122].)
"`"Where the complaint is defective, `[i]n the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his [or her] complaint.'"' [Citation.] Leave to amend may be granted on appeal even in the absence of a request by the plaintiff to amend the complaint. [Citations.] We determine whether the plaintiff has shown `in what manner he [or she] can amend [the] complaint and how that amendment will change the legal effect of [the] pleading.' [Citation.] `[L]eave to amend should not be granted where . . . amendment would be futile.' [Citation.]" (Caliber Bodyworks, Inc. v.Superior Court (2005) 134 Cal.App.4th 365, 373-374
[36 Cal.Rptr.3d 31].)
2. PAGA
PAGA was enacted in 2003 and amended as of August 11, 2004. In relevant part, it provides, "Notwithstanding any other provision of law, any provision of [the Labor Code] that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." (§ 2699, subd. (a).) PAGA establishes a default penalty and a private right of action for an aggrieved employee for violations of "all provisions of [the Labor Code] except those for which a civil penalty is specifically provided. . . ." (§ 2699, subds. (f), (g)(1).) Employees also have the right "to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part." (§ 2699, subd. (g)(1); accord,Caliber Bodyworks, Inc. v. Superior Court, supra,134 Cal.App.4th at p. 375.)
To file a PAGA civil action and recover the section 2699 penalties for the violation of Labor Code provisions at issue here, the aggrieved employee must satisfy the prerequisite procedures in section 2699.3, subdivision (a). The aggrieved employee alleging a violation of any provision listed in section 2699.5[3] must give written notice by certified mail to the Labor and Workforce Development Agency (Agency) and the employer of the specific provision of the Labor Code alleged to have been violated. (§ 2699.3, subd. (a)(1).) Once the Agency notifies the aggrieved employee that it does not intend to issue a *Page 527 
citation (§ 2699.3, subd. (a)(2)(A), (B)), the aggrieved employee may commence a PAGA civil action. (Ibid.; see also Caliber Bodyworks, Inc. v. Superior Court, supra,134 Cal.App.4th at p. 376.)
Generally speaking, the penalties recovered by aggrieved employees under PAGA are distributed "75 percent to the [Agency] for enforcement of labor laws and education of employers and employees about their rights and responsibilities under [the Labor Code] . . . and 25 percent to the aggrieved employees." (§ 2699, subd. (i).)
3. Res judicata principles
"`The doctrine of res judicata [also sometimes known as issue preclusion] precludes parties or their privies from relitigating an issue that has been finally determined by a court of competent jurisdiction. [Citation.] "Any issue necessarily decided in such litigation is conclusively determined as to the parties or their privies if it is involved in a subsequent lawsuit on a different cause of action." [Citation.]' [Citation.] [¶] Three elements must be met for res judicata to adhere: `(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party to or in privity with a party to the prior adjudication? [Citations.]' [Citation.]" (Nathanson v. Hecker (2002) 99 Cal.App.4th 1158, 1162
[121 Cal.Rptr.2d 773]; see Gikas v. Zolin (1993)6 Cal.4th 841, 849 [25 Cal.Rptr.2d 500, 863 P.2d 745].) Each of the three necessary elements for the doctrine to bar a subsequent lawsuit is present in this case.
4. Application
 a. The issue decided in the Evenson suit was identical with the one presented here.
With respect to this first element of the res judicata doctrine, "California courts employ the `primary rights' theory to determine the scope of causes of action. [Citation.] [T]here is only a single cause of action for the invasion of one primary right. In determining the primary right, `the significant factor is the harm suffered.' [Citation.]" (Swartzendruber v. Cityof San Diego (1992) 3 Cal.App.4th 896, 904
[5 Cal.Rptr.2d 64], disapproved on other grounds in Johnson v. City of LomaLinda (2000) 24 Cal.4th 61, 72 [99 Cal.Rptr.2d 316,5 P.3d 874].) *Page 528 
Deleon's complaint pleads the same set of operative facts violating the same primary right as raised by Evenson, namely, that Verizon Wireless made unlawful chargebacks against its employees' commissions that resulted in the violation of virtually the same Labor Code provisions cited in Evenson. Deleon's complaint casts the wrongs as the "fail[ure] to pay premium overtime wages to the Plaintiff and the other aggrieved employees" (see §§ 510, 1198), failure to provide accurate wage statements (§ 226); and "fail[ure] to pay all wages due and owing" (see §§ 201-204, 223). But the Deleon complaint clarifies that these wrongs were accomplished "through theuse of chargebacks on commissions." (Italics added.) Therefore, based on the harm alleged to have beensuffered, the primary right in both the Deleon and Evenson complaints involves the right to be properly compensated under the Labor Code by being free from commission chargebacks. Deleon seeks recovery for the same harm as alleged in Evenson. Deleon merely casts that same harm — commission chargebacks — in terms of the same and additional wage and overtime law violations through the authority of PAGA.
To argue there is a difference between the two lawsuits, Deleon cites the section 2699.3, subdivision (a) administrative prerequisites to a PAGA action. Evenson, Deleon notes, was not and could not have been brought under PAGA because that complaint never alleged compliance with the PAGA prerequisites. Thus, Deleon argues, Evenson does not bar his lawsuit, which was brought solely under PAGA. We disagree.
It is not significant to our analysis that the two operative complaints seek different forms of relief. "`[T]he key issue is whether the same cause of action is involved in both suits. California law approaches the issue by focusing on the "primary right" at stake: if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeksdifferent forms of relief and/or adds new facts supporting recovery. [Citations.]' [Citation.]" (Henry v.Clifford (1995) 32 Cal.App.4th 315, 321
[38 Cal.Rptr.2d 116], italics added.) Although Deleon seeks certain penalties only recoverable in a PAGA action and not alleged by Evenson, the primary right invaded remains the same. Stated otherwise, the same result obtains under this element of res judicata even though Evenson sought restitution and penalties for direct violation of Labor Code provisions and under the UCL, whereas Deleon seeks penalties via PAGA for largely the same Labor Code violations. The reason is that both actions were triggered by the infringement of the same primary right, namely, the commission chargebacks. *Page 529 
 b. There was a final judgment on the merits in Evenson.
Deleon does not dispute that the dismissal with prejudice of the Evenson action following the settlement of the class claims constitutes a final judgment on the merits. "[A] retraxit — modernly effected by a plaintiff's filing of a dismissal of his or her action with prejudice — is deemed to bea judgment on the merits against that plaintiff. [Citations.]" (Alpha Mechanical, Heating AirConditioning, Inc. v. Travelers Casualty Surety Co.of America (2005) 133 Cal.App.4th 1319, 1330-1331
[35 Cal.Rptr.3d 496].) "A retraxit arising from a dismissal with prejudice . . . is given the same finality as if the matter were adjudicated and proceeded to a final judgment on the merits." (Id. at p. 1331; see 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 378, pp. 1005-1006.)
The Evenson action terminated in a stipulated class action settlement under which the class plaintiffs agreed to dismiss the claims with prejudice. The trial court gave its "final approval" to proposed class action settlement and entered judgment "dismissing this class action against defendants . . . doing business as VERIZON WIRELESS, on the merits and withprejudice." (Italics added.) Hence, for all class members who did not opt out of the settlement, this dismissal operated as a final judgment on the merits for purposes of res judicata. (Cf. Rebney v. Wells Fargo Bank (1990)220 Cal.App.3d 1117, 1134 [269 Cal.Rptr. 844].)[4]
 c. Deleon, the party against whom the plea was asserted, was in privity with the Evenson class plaintiffs in the prior adjudication.
Deleon seeks to represent a group of "aggrieved employees" whom he described as "[a]ll current and former sales persons employed by [Verizon Wireless] at their business locations within the state of California, who failed to receive regular and overtime wages within the four (4) years of the filing of this complaint" on February 15, 2005 because Verizon Wireless made chargebacks against their commissions.
As certified by the trial court, the plaintiffs in the Evenson settlement class who released and dismissed their claims were defined as "[a]ll individuals who worked for Verizon Wireless as an hourly commissioned sales employee in the State of California . . . during the Class Period [March 6, 1999 to April 1, 2006] and who were subject at any time during the Class Period to Verizon *Page 530 
Wireless' policy providing that sales commission advances are not earned if the customer cancelled service for any reason within 365 days of the original sale. . . ." and who therefore did not receive their overtime pay or accurate wage statements. As Deleon even acknowledges in his complaint and based on these definitions, the parties against whom Verizon Wireless asserts res judicata here, Deleon's "aggrieved employees," are — with the exception of those people who opted out of the Evenson settlement and are hence not bound by that settlement — the very same people who were defined as members of the Evenson settlement class, i.e., Verizon Wireless's California employees who suffered chargebacks on commissions. The third element of res judicata asks, "`Was the party against whom the plea is asserted a party to or
in privity with a party to the prior adjudication? [Citations.]'" (Nathanson v. Hecker, supra,99 Cal.App.4th at p. 1162, italics added.) Because the Evenson plaintiffs who settled are the very same parties as the Deleon "aggrieved employees" who did not opt out of the settlement, the third element of res judicata is satisfied.
Deleon's central contention is that there was no privity here because the State of California is the "Principal" or "real party in interest" in a PAGA action. As the real party in interest, the state, not the aggrieved Evenson employees, is the plaintiff and the state is not in privity with the Evenson employees. The contention is unavailing.
PAGA's language is clear and unambiguous: In a PAGA representative action, plaintiffs sue on behalf of themselves and other aggrieved employees, not on behalf of the state. Historically, only the Agency and its constituent departments and divisions were authorized to "assess and collect" civil penalties from employers who violate enumerated sections of the Labor Code. (Caliber Bodyworks, Inc. v. Superior Court,supra, 134 Cal.App.4th at pp. 374-375.) For the stated purpose of addressing funding and staffing shortages, the Legislature established PAGA "as an alternative," to the Agency's enforcement. PAGA specifically authorizes an "aggrieved employee" "on behalf of himself or herself andother current or former employees" (§ 2699, subd. (a), italics added) to seek PAGA penalties.
We addressed this issue in Dunlap v. Superior Court
(2006) 142 Cal.App.4th 330 [47 Cal.Rptr.3d 614]. We observed that PAGA "`is intended to augment the enforcement abilities of the Labor Commissioner by creating analternative "private attorney general" system for labor law enforcement.'" (Id. at p. 337, some italics omitted, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 796 (2003-2004 Reg. Sess.) as amended Sept. 2, 2003, p. 2.) Hence, PAGA "empowers or deputizes an aggrieved employee to sue for civil penalties `on behalf of himself or herself *Page 531 
and other current or former employees' (§ 2699, subd. (a)), as an alternative to [Agency] enforcement. . . ." (Dunlap v.Superior Court, supra, at p. 337.)[5]
Section 2699, subdivisions (g)(1) and (h) are further evidence that the "aggrieved employee," not the state, is the plaintiff in a PAGA civil action. Section 2699, subdivision (g)(1) allows the PAGA employee to pursue other remedies concurrently with a PAGA action and recover attorney's fees. Such a provision would not be necessary if the real party in interest in a PAGA action were the state.[6] Section 2699, subdivision (h), precludes employees from bringing PAGA claims for violations for which the Agency has already issued a citation.[7] Such provisions clearly distinguish between the PAGA plaintiff and the Agency or state.
Based on PAGA's statutory scheme, its stated goals, andDunlap, it is clear that the plaintiffs here were the "aggrieved employees." The statute makes manifest that the PAGA civil action is brought "on behalf of [the aggrievedemployee] himself or herself and other current or formeremployees" (§ 2699, subd. (a), italics added). Nothing in the statute empowers the employee to bring an action on behalf of the state. Thus, the settling plaintiffs in Evenson are the very same people as the plaintiffs in Deleon's PAGA action.
As evidence that a PAGA action is brought on behalf of the state and not the employees, Deleon cites section 2699, subdivision (i) which provides that three-quarters of the PAGA penalties are paid to the state, whereas only one-quarter is recovered by the aggrieved employees. But, in an analogous area of the UCL, courts have held that "[t]he `filing of a [representative, i.e., class] action by a private plaintiff does not confer on that plaintiff the stature of a prosecuting officer, and the fact that the plaintiff may be acting as a so-called private attorney general is irrelevant. . . .' [Citation.]" (Hood v. Santa Barbara Bank Trust
(2006) 143 Cal.App.4th 526, 542 [49 Cal.Rptr.3d 369], quotingPeople v. Pacific Land Research Co. (1977)20 Cal.3d 10, 17-19 [141 Cal.Rptr. 20, 569 P.2d 125]; see also Paynev. National Collection Systems, Inc. (2001)91 Cal.App.4th 1037, 1045 [111 Cal.Rptr.2d 260] [distinguishing actions brought by prosecutors and representative actions *Page 532 
brought privately].) Indeed, Deleon could only bring his PAGA-based claims because the state or Agency specifically declined to pursue it.[8]
Next, after assuming the state is the interested party, Deleon argues that the state could not be in privity with the Evenson plaintiffs because Evenson made no attempt to demonstrate compliance with PAGA's prerequisites. This same contention was rejected by the Federal District Court inWaisbein v. UBS Financial Services, Inc. (N.D.Cal., Dec. 5, 2007, No. C-07-2328 MMC) 2007 WL 4287334.[9] There, the plaintiffs filed a prior class action against UBS for violations of various Labor Code provisions and pursuant to PAGA. In the ensuing settlement, the class released UBS for the state law claims. (2007 WL 4287334, at p. *1.) As did Deleon here, Waisbein opted out of the class and filed his action against UBS on behalf of himself and "`other aggrieved employees'" bringing, among other things, PAGA claims for many similar Labor Code violations. (2007 WL 4287334, at p. *1.) UBS moved to dismiss arguing that the state law claims were barred to the extent Waisbein sought relief on behalf of the former class members in light of the release in the settlement agreement. (Id., at p. *2.) As here, Waisbein countered that the plaintiffs in the earlier action failed to follow the correct procedures to allege a PAGA claim and so "they were never authorized by the State to bring a PAGA claim and, consequently, lacked authority to waive the State's ability to collect penalties against UBS." (2007 WL 4287334, at p. *2.) The district court rejected this contention. Following PAGA and our opinion in Dunlap, the court explained "a PAGA claim can only be filed where the State has made an affirmative decision not to pursue the matter, either by deciding not to investigate at all or by investigating and then deciding the employer should not be cited and subjected to penalties." (2007 WL 4287334, at p. *2.) Thus, the Waisbein court concluded PAGA plaintiffs sue on behalf of themselves and other employees, not on behalf of the state.
(2007 WL 4287334, at p. *2.)
Deleon is also incorrect in asserting that his PAGA lawsuit is analogous to a qui tam action. "`Qui tam' is a shortened phrase based on the first two words of an old Latin tag, sometimes quoted in full as `qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which originally meant that the plaintiff was one `"`who pursues this action on our Lord the King's behalf as well as his own.'"' [Citation.] Nowadays the state or federal *Page 533 
government is the sovereign in whose name the action is brought." (State of California ex rel. Hindin v.Hewlett-Packard Co. (2007) 153 Cal.App.4th 307, 311, fn. 2 [62 Cal.Rptr.3d 762].) For example, California's False Claims Act (Gov. Code, § 12650) allows an individual to bring a civil action "for the person and either for the State of California in the name of the state, . . . or for a political subdivision in the name of the political subdivision. . . ." (Gov. Code, § 12652, subd. (c)(1);[10] see also 4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 157, p. 223 ["A statute may authorize an informer's action (`qui tam action') to be brought by a private individual to recover a penalty onbehalf of the government. . . ." (Italics added.)].) By comparison, however, section 2699, subdivision (a) establishes that the PAGA plaintiffs bring their action "on behalf of himself or herself and other current or former employees,"not on behalf of the government.
Accordingly, the "aggrieved employees" in Deleon who didnot opt out of the Evenson settlement are barred from bringing this action because they are the very same
parties who released Verizon Wireless and obtained monetary benefit from Verizon Wireless in exchange for not pursuing their claims for chargebacks against commissions under the Evenson settlement. The privity element of res judicata is satisfied for those non-opting out plaintiffs.
5. Amendment
Deleon correctly argues that he should be given the opportunity to amend his complaint to allege violations of the Labor Code that accrued after the Evenson release period, i.e., April 1, 2006. We agree. (See Code Civ. Proc., § 464, subd. (a); 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1246, p. 690; Waisbein v. UBS Financial Services, Inc.,supra, *2, fn. 3.) The Evenson plaintiffs did not release Verizon Wireless for violations that occurred after April 1, 2006.
To summarize, the judgment must be reversed to allow Deleon to amend his complaint to allege violations that occurred after April 1, 2006. Deleon may continue to bring this lawsuit on behalf of himself and those Evenson plaintiffs who opted out of the Evenson settlement. *Page 534 
 DISPOSITION
The judgment is reversed in accordance with the views expressed herein. Appellant is to bear costs on appeal.
Croskey, Acting, P. J., and Kitching, J., concurred.
[1] All further statutory references are to the Labor Code, unless otherwise noted.
[2] The two classes were defined in the complaint thusly: "A. `Class A' is defined as: `All individuals who (1) worked for VERIZON as commissioned employees in the State of California (whether in a retail location or in a call center) at any time within the applicable statutes of limitation, (2) experienced a reduction in wages as a result of VERIZON'S chargeback or adjustment policies, and (3) who never agreed in writing to be bound by AirTouch's Alternative Disputes Resolution Policy.' [¶] B. `Class B' is defined as: `All individuals who (1) worked for VERIZON as non-exempt commissioned sales employees in California at any time during the applicable statutes of limitation, (2) worked overtime hours during that period, and (3) who never agreed in writing to be bound by AirTouch's Alternative Disputes Resolution Policy.'" (Original underscoring.)
[3] Other subdivisions of section 2699.3 list administrative procedures for actions that allege violations of Labor Code provisions not enumerated in section 2699.5 and are not at issue here.
[4] Indeed, Verizon Wireless is not attempting to preclude everyone in Deleon from bringing this lawsuit. Verizon Wireless recognizes that there is no res judicata effect as to Deleon and 12 others who opted out of the Evenson settlement.
[5] For this reason, we reject Deleon's argument that "As the deputized private attorney general, [he] acts as a proxy for the State of California."
[6] Section 2699, subdivision (g)(1) specifies that "Nothing in [PAGA] shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part."
[7] Section 2699, subdivision (h) reads: "No action may be brought under this section by an aggrieved employee if the agency or any of its departments, divisions, commissions, boards, agencies, or employees, on the same facts and theories, cites a person within the timeframes set forth in Section 2699.3 for a violation of the same section or sections of the Labor Code under which the aggrieved employee is attempting to recover a civil penalty on behalf of himself or herself or others or initiates a proceeding pursuant to Section 98.3." (Italics added.)
[8] For this reason, there is no authority, and indeed he cites none, for Deleon's proposition that "PAGA is an agency relationship between California and an aggrieved employee. . . ." Looking at the issue from a somewhat different perspective, PAGA expands the right of private plaintiffs to sue for the violation of certain statutes for which, in the past, there was no private right of action. As an incentive, PAGA allows the plaintiffs to recover 25 percent of the allowed penalty. (§ 2699, subd. (i).)
[9] Although unpublished California cases may not be cited, the California Rules of Court do not prohibit citation to unpublished federal cases. (Cal. Rules of Court, rule 8.1115; Pacific Shore Funding v. Lozo (2006)138 Cal.App.4th 1342, 1352, fn. 6 [42 Cal.Rptr.3d 283].)
[10] A qui tam action "is intended to `"supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities."' [Citations.] In general, the California Act permits a governmental agency, or a qui tam plaintiff bringing an action on behalf of the governmental agency, to recover civil penalties and damages from any person who, for example, knowingly presents to the state or one of its political subdivisions a false claim for payment or approval. ([Gov. Code,] § 12651, subd. (a)(1).)" (State of California ex rel. Hindin v.Hewlett-Packard Co., supra, 153 Cal.App.4th at pp. 312-313, fn. omitted.) *Page 535