Opinion
 

 ZEBROWSKI, J.
 

 This case concerns the requirements for proving a debt owing to a bank taken over by the Federal Deposit Insurance Corporation (FDIC). After the FDIC took over the bank in this case, the FDIC assigned the bank’s assets to the plaintiff. One such asset was the lender’s position in a “revolving line of credit.” The line of credit was evidenced by a document somewhat inaccurately entitled “Promissory Note.” The Promissory Note document was not a promissory note for a specific sum, but rather provided that defendant was liable for all sums which might either be “advanced” to defendant or “credited to any of [defendant’s] accounts with [the bank].” In the Promissory Note document, defendant promised to repay either $106,775 “or so much as may be outstanding, together with interest on each of the unpaid outstanding principal balances from the date of the advance until repayment of the advance or maturity, whichever occurs first.” The Promissory Note document itself does not reveal exactly how much was advanced or how much was repaid.
 

 
 *1036
 
 The plaintiff as assignee of the FDIC sued defendant for the amount plaintiff claimed was owing on the line of credit. Plaintiff moved for summary judgment and offered in support of its motion a copy of a document entitled “Note Ledger.” The Note Ledger was a form filled in by hand which purported to cover approximately 12 months. It allegedly showed that defendant had made 12 draws in varying amounts on the line of credit over a period of approximately 6 months, totaling $104,000. The Note Ledger also allegedly recorded 11 interest payments in varying amounts, but no principal payments. One interest payment was shown reversed as “nsf,” but there was no subsequent adjustment either to the loan balance or to the one subsequent interest payment recorded. Although the recorded advances total only $102,000, the Note Ledger shows the final loan balance as $104,000. The $2,000 discrepancy appears to be an arithmetic error rather than an interest adjustment.
 

 To lay a foundation for admission of the Note Ledger in evidence, plaintiff presented the declarations of plaintiff’s own vice-president. He declared that he is familiar with the records of commercial paper owned by plaintiff, including the Promissory Note document and Note Ledger in issue here. He stated that he is a custodian of plaintiff’s records, that plaintiff’s records are made in the ordinary course of business at or near the time of the event they record, and that they are made by persons who have a business duty to record such information. He declared that he found the Note Ledger in the records plaintiff received from the FDIC. Plaintiff presented no evidence of the recordkeeping practices of the bank during the period allegedly recorded on the Note Ledger, and hence presented no evidence of the manner in which the Note Ledger was prepared, the origin of the information it contained, etc. Plaintiff similarly did not attempt to lay any other foundation for admission of the Note Ledger by way of admission, estoppel, etc.
 

 Defendant objected to admission of the Note Ledger on grounds of hearsay and lack of foundation for any exception to the hearsay rule.
 
 [1]
 
 The trial court sustained the objection, and denied plaintiff’s motion, ruling:
 

 
 *1037
 
 “There is a triable issue as to what the defendant owes. The objections to [the vice-president’s] declaration and the note ledger from [the bank] are sustained.” The order denying summary judgment stated that a triable issue of material fact existed as to the amount defendant owed on the note.
 

 Plaintiff and defendant then stipulated that judgment could be entered against plaintiff, and it was. Plaintiff now appeals.
 

 Discussion
 

 1.
 
 The D’Oench Duhme doctrine.
 

 Plaintiff primarily argues that the Promissory Note document and Note Ledger both must be admitted in evidence simply because they are documents found in bank records which were received by plaintiff from the FDIC, and which the FDIC obtained when it took over the bank. Plaintiff claims that admissibility is required by the
 
 D’Oench Duhme
 
 doctrine
 
 (D’Oench, Duhme & Co.
 
 v.
 
 F.D.I.C.
 
 (1942 ) 315 U.S. 447 [62 S.Ct. 676, 86 L.Ed. 956]) and corresponding federal statutes. (12 U.S.C. §§ 1823(c)(1), 1820(f).) The
 
 D’Oench Duhme
 
 doctrine and its codification and arguable expansion in United States Code section 1823(e) (see
 
 Federal Sav. & Loan Ins. Corp.
 
 v.
 
 Griffin
 
 (5th Cir. 1991) 935 F.2d 691, 698;
 
 Sunburst Bank
 
 v.
 
 Executive Life Ins. Co.
 
 (1994) 24 Cal.App.4th 1156, 1165 [29 Cal.Rptr.2d 734]) preclude the use of “side agreements” to diminish the rights of the FDIC in assets acquired from failed financial institutions.
 
 [2]
 
 The purpose is to preclude the use of secret, extraneous agreements to avoid obligations to banks taken over by the FDIC. (See
 
 Langley
 
 v.
 
 FDIC
 
 (1987) 484 U.S. 86
 
 *1038
 
 [108 S.Ct. 396, 98 L.Ed.2d 340], and
 
 Federal Sav. & Loan Ins. Corp.
 
 v.
 
 Griffin, supra,
 
 935 F.2d 691, 697
 
 [“D’Oench, Duhme . . .
 
 allows the FDIC to rely on the official bank records, to the exclusion of any extraneous matters . . . .”].)
 

 Langley
 
 involved a promissory note for a sum certain. The borrower opposed the FDIC’s attempt to collect on the note by alleging that the bank had procured the note by making oral misrepresentations. The United States Supreme Court in
 
 Langley
 
 found that the
 
 D’Oench Duhme
 
 doctrine was intended to accomplish two purposes: First, it was intended to allow bank examiners to rely on a bank’s official records without regard to undisclosed conditions or agreements. Second, it was intended to ensure that senior bank officials consider and approve any enforceable agreement entered into with a borrower.
 
 Langley
 
 construed a claim of misrepresentation as tantamount to a claim of side agreement, and ruled that the
 
 D’Oench Duhme
 
 doctrine extended to preclude claims of misrepresentation, as well as claims of side agreement, as a basis to avoid obligations to banks taken over by the FDIC.
 

 Langley
 
 established that the
 
 D’Oench Duhme
 
 doctrine has an expansive reach. It is generally cited for that proposition. However, there are several important distinctions between the present case and
 
 Langley.
 
 First, neither
 
 Langley
 
 nor its progeny concerned a “revolving line of credit,” as opposed to a loan for a sum certain.
 
 [3]
 
 Second, neither
 
 Langley
 
 nor its progeny concerned the question of admissibility of documents to prove the content of bank records. Instead, these cases concerned either the subject of “side agreements” raised as a defense, or the issue of whether claims of fraudulent misrepresentation or omission were precluded just as claims of side agreement are precluded. (See, e.g.,
 
 Resolution Trust Corp.
 
 v.
 
 Ehrenhaus
 
 (7th Cir. 1994) 34 F.3d 441
 
 [D’Oench Duhme
 
 prevents guarantor from relying on fraud defense];
 
 Federal Deposit Ins. Corp.
 
 v.
 
 Bell
 
 (10th Cir. 1989) 892 F.2d 64 [same];
 
 McCullough
 
 v.
 
 F.D.I.C.
 
 (1st Cir. 1993) 987 F.2d 870
 
 [D’Oench Duhme
 
 prevents borrower from relying on fraud defense];
 
 Federal Deposit Ins. Corp.
 
 v.
 
 State Bank of Virden
 
 (7th Cir. 1990) 893 F.2d 139 [coparticipating bank cannot rely on setoff].)
 

 There is no defense of side agreement, misrepresentation or omission involved here. The question for the trial court simply was what amount defendant owed. Plaintiff bore the burden of proof on that issue. Plaintiff attempted to meet that burden by attempting to prove the content of the bank’s records through an offer of the Note Ledger. The Note Ledger was hearsay, and its offer into evidence raised the question of its admissibility to
 
 *1039
 
 prove the truth of its contents. Nothing in the authorities cited above suggests that any document found in a bank’s records is admissible to impose liability on a defendant even if the document fails to meet normal standards of reliability. The
 
 D’Oench Duhme
 
 cases and statutes do not provide, as plaintiff urges, that the “records speak for themselves as to enforceability of the debt.” A rule allowing or requiring admissibility of any document found in a bank’s records without evidence of reliability would be a sharp break with past practice, could raise grave implications for the continued maintenance of reliable bank records over the long term, and is far beyond the scope of the
 
 D’Oench, Duhme
 
 doctrine.
 

 2.
 
 The FDIC document reproduction and retention statute.
 

 Plaintiff also contends that 12 United States Code section 1820(f) requires automatic admissibility of any document found by the FDIC in the files of a failed bank. The contention has some superficial semantic appeal in light of the wording of the statute, but ultimately cannot be correct. The code section provides: “The Corporation [the FDIC] may cause any and all records, papers, or documents kept by it or in its possession or custody to be photographed or microphotographed or otherwise reproduced upon film, which photographic film shall comply with the minimum standards of quality approved for permanent photographic records by the National Institute of Standards and Technology. Such photographs, microphotographs, photographic film or copies thereof
 
 shall be deemed to be an original record for all purposes, including introduction in evidence in all State and Federal courts or administrative agencies and shall be admissible to prove any act, transaction, occurrence, or event therein recorded.
 
 Such photographs, micro-photographs, or reproduction shall be preserved in such manner as the Board of Directors of the Corporation shall prescribe and the original records, papers, or documents may be destroyed or otherwise disposed of as the Board shall direct.” (Italics added.)
 

 It should initially be noted that this section is found not in an area of the code governing trial or court procedures, but rather in a series of sections governing the administration of the FDIC. Nevertheless, in view of the language italicized above, plaintiff urges that this section was intended to mandate that a copy of any document found in a failed bank’s records is automatically admissible without foundation.
 

 This section does provide that copies shall be deemed the same as originals. The section therefore avoids best evidence objections to copies held by the FDIC. However, if this section were interpreted to provide that copies were admissible without a foundation, a quite incongruous situation
 
 *1040
 
 would be created: copies would be given a preferred evidentiary status over originals. There is nothing in the section to suggest a congressional intent to change the rules for admissibility of originals. If the section were interpreted as plaintiff urges, copies would be admissible without foundation, even though originals would not be admissible unless a foundation were first laid. The best evidence rule would then be inverted, with copies admissible and their originals inadmissible, even though photocopying a document does not make it more reliable. If this were the intent and proper construction of 12 United States Code section 1820, originals (even when available) would rarely be offered in evidence, because a foundation would then be required. Instead the FDIC or its assignee, even if it had originals, would simply photocopy the originals to dispense with the otherwise-applicable requirement of a foundation. It would be an absurd construction of the statute to conclude that the statute was intended to provide that the burden of laying a foundation can be avoided by a trip to the photocopying machine. Whenever one of two or more possible constructions of a statute leads to an absurdity, the appearance of the absurdity is an indication that the proposed construction is incorrect. No such absurdity arises if section 1820 is confined to its apparent purpose: allowing the use of copies the same as if they were originals, thus eliminating the necessity of storing and safeguarding originals. This construction, however, which we place on the statute, retains the foundational requirements that normally apply to originals.
 

 3.
 
 Congress could presumably change the law, but has not.
 

 We have therefore been cited first to a doctrine which precludes reliance on side agreements or claims of misrepresentation, and second to a federal statute which allows copies to be used the same as originals. Since no side agreement or misrepresentation is involved here, the doctrine is not implicated. Copies could likely be used the same as originals under California evidence law in any event. (Evid. Code, § 1511 [admissibility of duplicates].) We have not been cited to any federal statute requiring the admission of documents offered as business records without proof that the documents in fact qualify as business records (i.e., the foundational elements required by Evid. Code, § 1271).
 

 Congress presumably could enact a statute providing that any document found in the records of a failed bank is presumed accurate and is therefore admissible to impose liability on a bank customer. A rebuttable presumption would then be created, shifting to the bank customer the burden of proving that the customer
 
 does not
 
 owe whatever amount is stated on the bank document. The burden of mistakes or inaccuracies in bank records would then be shifted from the FDIC and its assignees to the customer. There are
 
 *1041
 
 arguable reasons in favor of such a rule. However, there are also strong reasons against such a rule. A bank customer normally does not see bank records and has no control and little influence over their creation. Bank customers are often individuals who can ill afford the burden of mistaken imposition of a sizeable liability. If a proposal were expressly made in Congress to create a rule of law making a bank customer presumptively liable for whatever amount the bank’s documents might reflect—even if there were no evidence of how the documents were prepared, where the information came from, etc., and hence no foundation for the trustworthiness of such documents—that proposal would likely be the subject of considerable debate as Congress considered the pros and cons of such a rule, whether it should be qualified, how, etc. The context in which the documents were prepared—by a bank in the process of failing—would also likely be a subject for legislative discussions. There is no indication that such legislative discussions ever took place, and Congress has never enacted a statute expressly stating such a rule.
 

 4.
 
 Evidence Code section 635 does not supply a presumption applicable to a line of credit agreement.
 

 Evidence Code section 635 provides that “[a]n obligation possessed by the creditor is presumed not to have been paid.” This presumption, as are all evidentiary presumptions, is based upon the probabilities of a given situation. Normally, a promissory note is given to a lender contemporaneously with the borrower’s receipt of the face amount of the note. When a promissory note is paid, the note is normally cancelled. Thus when the lender holds an uncancelled promissory note, truth favors the conclusion that the borrower received the money and did not repay the note. The law thus creates a presumption in favor of this conclusion. The burden then shifts to the borrower to rebut the presumption either by proving payment, or by proving that the face amount of the note was never advanced. (Cf.
 
 Light
 
 v.
 
 Stevens
 
 (1911) 159 Cal. 288 [113 P. 659];
 
 Van Fleet-Durkee, Inc.
 
 v.
 
 Oyster
 
 (1952) 112 Cal.App.2d 739 [247 P.2d 403] [both cases common law precursors of Evidence Code section 635].)
 

 The presumption of nonpayment appears based to some extent on the negotiability of an unconditional promissory note, and to some extent on the simple inadvisablity of repaying a note without receiving cancellation of the note. If a note is unconditional and therefore negotiable, the uncancelled note could be sold to a holder in due course, who could then enforce it against the maker of the note. Even if the note is not sold to a holder in due course, the borrower may be faced with the appearance of an outstanding . debt in the hands of the lender or its successors if a promissory note is not
 
 *1042
 
 cancelled after payment. Thus the California Supreme Court stated in
 
 Light:
 
 “It is the ordinary course of business on the part of reasonably careful persons to require the delivery of their written obligations upon discharge thereof, or if this cannot be obtained, to require some written evidence of the discharge, and it would be quite a departure from ‘the ordinary course of business,’ which is presumed to have been followed [citation], to pay the full amount due on a note without receiving the note from the payee or, if it cannot be delivered, some other evidence of payment.” (159 Cal. 288, 292-293).
 

 In many circumstances, this evidentiary rule would operate to the benefit of an assignee of the FDIC. The linchpin of the presumption, however, is the near certainty that the face amount of a promissory note was advanced when the note was made. The notes involved in both
 
 Light
 
 and
 
 Van Fleet-Durkee
 
 were unconditional fixed-sum promissory notes. Here plaintiff does not hold an uncancelled promissory note for any sum certain. The agreement to repay reflected on the document headed “Promissory Note” is not an unconditional agreement to repay a sum certain. Instead, it is only a conditional agreement to repay whatever sums might periodically be advanced. The mere existence of this line of credit agreement does not support a presumption that the full amount of the line was ever advanced. For the same reason, the Promissory Note document would not, for example, be negotiable.
 

 If plaintiff did hold an uncancelled promissory note for a sum certain, the presumption created by Evidence Code section 635 would then apply to shift the burden to defendant to prove that the debt had been paid, in whole or in part. This presumption can likely be utilized by FDIC assignees in many cases. In this case, however, since plaintiff is only the assignee of the creditor’s position in a revolving line of credit, no presumption applies. Instead, plaintiff bore the typical burden of proving its case by admissible evidence.
 

 5.
 
 Authentication versus hearsay.
 

 The Promissory Note document itself is not a business record as that term is used in the law of hearsay, but rather is an operative contractual document admissible merely upon adequate evidence of authenticity. Sufficient evidence of authenticity to support admission of the Promissory Note document could be supplied by numerous means, at least some of which would likely be available even to the FDIC or its assignees. (See Evid. Code, § 1400 et seq.). The trial judge’s minute order denying summary judgment astutely sustained defendant’s hearsay objection only to the Note Ledger. The minute
 
 *1043
 
 order makes no ruling excluding the Promissory Note document. The Note Ledger was-claimed to record advances, payments, interest accruals, etc. It was submitted to prove the factual accuracy of the periodic events it allegedly recorded. It was therefore not admissible over a hearsay objection unless supported by the foundation specified in Evidence Code section 1271, consisting of elements designed to ensure its trustworthiness, or by some other foundation (i.e., admission, estoppel, etc.).
 

 6.
 
 Conclusion.
 

 The trial court was correct in sustaining the hearsay objection to the Note Ledger. Only the Promissory Note at most was admissible. The Promissory Note in isolation did not show what amounts were advanced pursuant to the line of credit, what amounts were repaid, when, what interest had accrued, etc. The trial court was therefore correct in finding a triable issue as to the amount owing and in denying summary judgment. After the summary judgment motion was properly denied, the parties stipulated that judgment be entered against plaintiff. Perhaps there were business reasons for this stipulation. Whatever the reasons may have been, it was certainly proper for the trial court to enter judgment as the parties wished. We can find no error in any of the trial court’s rulings.
 

 This is not a completely pleasing result in light of the strong indications in the record that defendant does owe some amount. In most instances, however, such a result will not be foreordained. This is a preponderance of the evidence system. The evidence need not be precise or overwhelming to support a judgment. However,
 
 some
 
 admissible evidence is necessary to support a judgment, whether direct or circumstantial, admitted into evidence by way of one foundation or another. Here no admissible evidence was offered, and summary judgment was therefore properly denied.
 

 Disposition
 

 The judgment is affirmed. Each side to bear their own costs on appeal.
 

 Boren, P. J., and Nott, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied September 17, 1997.
 

 [1]
 

 The most likely applicable exception would be the business records exception set forth in Evidence Code section 1271. Section 1271 provides: “[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:
 

 “(a) The writing was made in the regular course of a business;
 

 “(b) The writing was made at or near the time of the act, condition, or event;
 

 “(c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and
 

 “(d) The sources of information and method and time of preparation were such as to indicate its trustworthiness.”
 

 [2]
 

 Title 12 United States Code section 1823(e)(1) provides: “No agreement which tends to dimmish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
 

 “(A) is in writing,
 

 “(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
 

 “(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
 

 “(D) has been, continuously, from the time of its execution, an official record of the depository institution.”
 

 The application of the common law
 
 D’Oench, Duhme
 
 doctrine has been narrowed by the United States Supreme Court in
 
 O’Melveny & Myers
 
 v.
 
 F.D.I.C.
 
 (1994) 512 U.S. 79 [114 S.Ct. 2048, 129 L.Ed.2d 67]. (See
 
 DiVall Insured Income
 
 v.
 
 Boatmen’s First Nat. Bank
 
 (8th Cir. 1995) 69 F.3d 1398, 1402;
 
 F.D.I.C.
 
 v.
 
 O’Melveny & Myers
 
 (9th Cir. 1995) 61 F.3d 17, 18-19 [“Since the FDIC is a federal instrumentality, long-standing case law then stood for the proposition that the application of defenses against the FDIC were governed by federal law. See [citations, including
 
 D’Oench,
 
 Duhme] These cases have now been overruled by the Supreme Court. . . ."].)
 

 [3]
 

 The significance of this point is further developed in part 4 below dealing with the presumption regarding fixed sum promissory notes contained in Evidence Code section 635.