[No. A125297. First Dist., Div. Three. Aug. 30, 2010.]

MICHAEL LYNN GABRIEL et al., Plaintiffs and Appellants, v. WELLS FARGO BANK, N.A., Defendant and Respondent.

[No. A127675. First Dist., Div. Three. Aug. 30, 2010.]

KUNIKO YAMAMOTO, Plaintiff and Appellant, v. WELLS FARGO BANK, N.A., Defendant and Respondent.

## COUNSEL

Michael Lynn Gabriel, in pro. per., and for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Mark J. Breckler, Assistant Attorney General, Jacqueline Dale, Larry G. Raskin and Nicklas A. Akers, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, Mark D. Lonergan and Peter H. Bales for Defendant and Respondent.

## OPINION

**POLLAK, Acting P. J.**—In 1988, Hideo Yamamoto obtained a certificate of deposit from Wells Fargo Bank, N.A. (Wells Fargo), for approximately $1 million, and at the same time opened a savings account into which the interest from the certificate of deposit was to be paid. Although his wife, Kuniko Yamamoto, was named as a beneficiary of both accounts, she did not learn of their existence until 2007, 16 years after Hideo's death.[1] Her discovery of a receipt for the certificate of deposit found in a safe deposit box—marked "not negotiable," and stating that presentment of the receipt is unnecessary for withdrawal of funds—led to two actions now consolidated before us. In the first, Kuniko sued Wells Fargo, claiming that it failed to pay her the money in the accounts. In the second, her attorney, Michael Lynn Gabriel, brought a qui tam action on behalf of the State of California against Wells Fargo, alleging that the bank violated the False Claims Act (Gov. Code, § 12650 et seq.) by failing to report the existence of these allegedly unpaid funds that should have been escheated to the state.

In Kuniko's action against Wells Fargo, the court granted summary judgment in favor of the bank, finding that despite the absence of definitive records, Wells Fargo had presented sufficient evidence of its normal business practices to establish that no funds remained in either account, and that neither the nonnegotiable receipt nor Kuniko's testimony that she had not received any of the funds created a triable issue of fact as to the existence of funds in the accounts. Prior to resolving Kuniko's action, the court sustained without leave to amend a demurrer to the qui tam complaint on the ground that the action was barred by the statute of limitations. We conclude that the court correctly granted summary judgment in Kuniko's action, and that the qui tam action therefore was properly dismissed, although it is now unnecessary to consider the limitations issue on which the trial court relied.

### BACKGROUND

The essential facts are largely undisputed. On June 22, 1988, Hideo purchased a certificate of deposit from Wells Fargo in the amount of

---

[1] For the purpose of clarity we refer to Hideo and Kuniko by their first names.

$976,691.60, payable to his wife Kuniko. Interest from the certificate was to be placed in a savings account held in Kuniko's name. Hideo apparently placed a receipt from the bank for the certificate of deposit account in a safe deposit box at the bank, which was also in Kuniko's name. The receipt is entitled "Certificate of Deposit" and states that it "is not transferable or negotiable. Presentation of this certificate is not required to withdraw funds."

Hideo died in November 1991. In 2005, Kuniko "disposed of a box of old bank statements, IRS forms, and bills that dated back nearly 20 years." Her son had handled the probate of Hideo's estate and in the process searched the box "for money or evidence of money being deposited at a bank. We did not find evidence of any such money."

In April 2002, Wells Fargo opened the safe deposit box because the rental fee had not been paid and the box was presumed abandoned. It found the certificate of deposit and in June 2006 sent it to California's State Controller's Office as unclaimed property. In August 2007, Kuniko received a letter from the controller's office informing her that it was holding the contents of a safe deposit box from Wells Fargo. The controller sent her the contents of the box, which included the receipt for the certificate of deposit. This was the first time that she learned of the existence of the certificate of deposit or of the savings account.

In May 2008 Kuniko filed a complaint against Wells Fargo alleging various causes of action. The amended complaint that emerged following rulings on successive demurrers contains three causes of action: breach of contract, money had and received, and breach of the implied covenant of good faith and fair dealing. Wells Fargo ultimately moved for summary judgment, which Kuniko opposed and then moved for sanctions. The trial court in a thorough and well-reasoned order granted the motion for summary judgment and denied the motion for sanctions. Judgment was entered in favor of Wells Fargo and Kuniko timely noticed an appeal.

In June 2008, Gabriel, Kuniko's attorney, filed a separate qui tam action against Wells Fargo.[2] The second amended complaint alleges that the bank failed to escheat to the state the funds held by the bank in the certificate of

---

[2] " 'Qui tam' is a shortened phrase based on the first two words of an old Latin tag, sometimes quoted in full as 'qui tam pro domino rege quam pro se ipso in hac parte sequitur,' which originally meant that the plaintiff was one ' " 'who pursues this action on our Lord the King's behalf as well as his own.' " ' [Citation.] Nowadays the state or federal government is the sovereign in whose name the action is brought." (*State of California ex rel. Hindin v. Hewlett-Packard Co.* (2007) 153 Cal.App.4th 307, 311, fn. 2 [62 Cal.Rptr.3d 762].)

deposit and savings accounts. The trial court sustained Wells Fargo's demurrer without leave to amend on the ground that the complaint was barred by the statute of limitations. Judgment was entered in Wells Fargo's favor and Gabriel timely appealed. This court ordered the two cases consolidated for argument and decision.

## DISCUSSION

### Kuniko's Action

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) In moving for summary judgment, "The defendant may . . . present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Aguilar*, at p. 855.)

In support of its motion for summary judgment, Wells Fargo presented Kuniko's deposition testimony that her husband was solely responsible for the couple's finances; that she and her husband never discussed financial matters; that she did not have any personal knowledge that the certificate of deposit or savings accounts were opened and did not know if any money had been withdrawn from those accounts; that she did not know the accounts existed before she received the receipt in 2007; and that she disposed of all of the couple's bank records in 2005 without looking at them. It also presented evidence that the certificate of deposit and savings accounts had been closed for at least seven years.

Wells Fargo submitted the declaration of the operations manager of the bank's unclaimed property department who is responsible for monitoring dormant accounts and reporting escheated property to the State Controller's Office. Her declaration states that "it is Wells Fargo's policy and practice to maintain account records for seven years after the account has been closed . . . ." She states that "After Wells Fargo was contacted by counsel for plaintiff, before this lawsuit was filed, the Bank investigated its records in December 2007 and February of 2008 to determine if either the CD Account or the Savings Account was still open. At that time it was determined by Wells Fargo that neither account was open, and that no records existed which would show when those accounts had been closed or how much money had been in the account when they were open." "A search of Wells Fargo's computer database shows that the Savings Account related to the CD had been closed by September 29, 1992. On that date the Bank was attempting to set up an automatic debit against the Savings Account in order to automatically deduct the rental fee for plaintiff's safe deposit box." She also determined that the certificate of deposit account had been closed by 2001. Finally, the operations manager declares that "Wells Fargo has no records indicating that any funds from the CD account or the savings account were ever transferred to the State Controller's Office as unclaimed property. If any unclaimed funds remained in either of these accounts, those funds would have been escheated to the State Controller's Office and Wells Fargo would have records of that fact." Wells Fargo also presented evidence that it issues a federal tax form to its customers every year "listing all interest earned for each tax year," that it keeps records of those forms for seven years, and therefore if the accounts had contained funds during that time Wells Fargo would have a record of the interest, but that it has no such records. Finally, Wells Fargo presented evidence confirming the statements on the certificate of deposit that its presentation was not required to withdraw funds from the certificate of deposit account and that the certificate is not transferable or negotiable.

The trial court found that Wells Fargo had met its initial burden that it was entitled to judgment because Kuniko could not prove nonpayment.[3] Wells Fargo's evidence "establishes that the *absence* of specific Wells Fargo records infers that the certificate of deposit was withdrawn. . . . [¶] . . . Since there is *no evidence that plaintiff Yamamoto's late husband did not withdraw the* funds, and no evidence that the terms of the certificate of deposit account did

---

[3] At trial Kuniko would have the burden of proving nonpayment. (See CACI No. 303 [on a cause of action for breach of contract the plaintiff must prove that defendant "failed to do something that the contract required [it] to do"]; CACI No. 370 [on a common count for money had and received the plaintiff must prove that defendant "has not given the money to" plaintiff]; CACI No. 325 [on a cause of action for breach of the implied covenant of good faith and fair dealing the plaintiff must prove that the defendant "unfairly interfered with [plaintiff]'s right to receive the benefits of the contract"].)

not permit him to withdraw the funds, plaintiff Yamamoto is unable to meet her burden of producing evidence on an essential element of her claim."

In opposing the motion Kuniko argued in the trial court and continues to assert on appeal that Evidence Code section 635 shifts the burden of nonpayment to Wells Fargo. Section 635 provides, "An obligation possessed by the creditor is presumed not to have been paid." However, the receipt on which Kuniko relies is not an "obligation" within the meaning of this provision. "The presumption of nonpayment appears based to some extent on the *negotiability* of an unconditional promissory note, and to some extent on the simple inadvisability of repaying a note without receiving cancellation of the note. *If a note is unconditional and therefore negotiable*, the uncancelled note could be sold to a holder in due course, who could then enforce it against the maker of the note." (*Remington Investments, Inc. v. Hamedani* (1997) 55 Cal.App.4th 1033, 1041 [64 Cal.Rptr.2d 376], italics added.) All of the cases on which Kuniko relies involved instruments that the opinions indicate either explicitly or implicitly were negotiable. None involved a document containing the restrictions that appear on the receipt presented in this case. (See *Light v. Stevens* (1911) 159 Cal. 288 [113 P. 659]; *Poorman v. Mills & Co.* (1868) 35 Cal. 118, 120; *Brummagim v. Tallant* (1866) 29 Cal. 503.) These cases have no application to a receipt such as that involved here that explicitly states it is nonnegotiable and need not be presented to withdraw the funds. As the trial court correctly observed, "Since there is evidence that the contract that is at issue in this action did not require physical presentment of the certificate of deposit to withdraw deposited funds, there is no basis for an inference that plaintiff's possession of the unendorsed receipt denotes nonpayment, let alone a presumption of nonpayment."

This conclusion is supported by California Uniform Commercial Code section 3104, which provides that "Except as provided in subdivisions (c) and (d), 'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it is all of the following: [¶] (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder. [¶] (2) Is payable on demand or at a definite time. [¶] (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . ." Subdivision (d) provides that "A promise or order other than a check is not an instrument if, at the time it is issued or first comes into possession of a holder, *it contains a conspicuous statement, however expressed, to the effect that the promise or order is not negotiable* or is not an instrument governed by this division." (Italics added.)

In all events, the presumption in Evidence Code section 635 is a rebuttable presumption (Evid. Code, § 601; *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 694 [209 Cal.Rptr. 682, 693 P.2d 261]) and the trial court also held that even if the presumption applied, the evidence presented by Wells Fargo is sufficient to overcome it, and that Kuniko presented no evidence creating a triable issue of fact in this regard.[4] The only evidence that Kuniko presented that Wells Fargo possesses funds belonging to her is the certificate of deposit receipt and her own declaration that she has received no funds from the bank. However, because the receipt says on its face that presentment is not needed to withdraw funds, the fact that it bears no annotation that the funds have been repaid or the certificate cancelled is insignificant. While Kuniko may not have received any of the funds or authorized the bank to pay the funds to others, none of these facts tends to prove that Hideo did not withdraw all of the funds before his death. In her deposition, Kuniko disclaimed any knowledge of the accounts or of her husband's financial dealings.[5] Wells Fargo's evidence that no money remained in the accounts shifted to Kuniko the burden of presenting evidence sufficient to create a triable issue as to nonpayment, and her possession of the receipt and her testimony were insufficient to do so. The trial court therefore properly granted summary judgment in favor of Wells Fargo (and denied Kuniko's motion for sanctions).

### Qui Tam Action

Although the trial court dismissed Gabriel's qui tam action on the ground that it is barred by the statute of limitations, in light of the conclusion we have reached with respect to Kuniko's claim we need not consider the limitations issue. The qui tam action is predicated on Gabriel's allegation that Kuniko "was never paid and never took possession of the interest payments made on the certificate of deposit and the funds remained and continue[] to remain in the custody and control of the defendant Wells Fargo Bank."[6] If

---

[4] Kuniko objected to Wells Fargo's evidence and the trial court overruled those objections. She does not challenge those rulings on appeal, nor does she challenge the trial court's denial of her request for a continuance to seek further discovery.

[5] In her declaration in opposition to the motion for summary judgment, Kuniko states that the translator in her deposition did not translate her statements accurately, and that she answered "I do not know" or "I do not recall" at times because she could not recall an exact number or answer. However, none of the inaccuracies that she points to in the declaration create a triable issue of fact.

[6] The qui tam complaint sets forth two causes of action, both of which allege that Wells Fargo violated California's False Claims Act (Gov. Code, § 12650 et seq.) (FCA) because it did not file a report at the time the funds were required to be escheated to the state and did not transfer the funds to the State Controller's Office as required. The first cause of action addresses the alleged failure to report and escheat funds from the savings account in 1992 and the second alleges the same regarding the certificate of deposit funds. The FCA provides for

Gabriel is bound by the adverse determination of this allegation in Kuniko's action, his qui tam action was properly dismissed regardless of whether it was timely filed. We may of course judicially notice in the qui tam action the determination that has been made in Kuniko's action.[7] (Evid. Code, § 452, subd. (d).) ■ A demurrer may be sustained if the inability to state a claim on which relief may be granted appears from facts that are judicially noticeable. (Code Civ. Proc., § 430.30, subd. (a); *Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 590 [226 Cal.Rptr. 855]; *People v. Oakland Water Front Co.* (1897) 118 Cal. 234, 245 [50 P. 305].) Moreover, the trial court's order may be upheld " 'on a ground not considered by the court below as long as it comes within the four corners of the demurrer, namely, a failure to state a cause of action.' " (*Muraoka v. Budget Rent-A-Car, Inc.* (1984) 160 Cal.App.3d 107, 120 [206 Cal.Rptr. 476]; see *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].)[8]

■ Gabriel's complaint is barred by collateral estoppel. "Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them. ■ Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896 [123 Cal.Rptr.2d 432, 51 P.3d 297].) "Collateral estoppel precludes the relitigation of an issue only if (1) the issue is identical to an issue decided in a prior proceeding; (2) the issue was actually litigated; (3) the issue was necessarily decided; (4) the decision in the prior proceeding is final and on the merits; and (5) the party against whom collateral estoppel is asserted was a party to the prior proceeding or in privity with a party to the prior proceeding." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82 [70 Cal.Rptr.3d 817].)

---

civil liability where an entity "[h]as possession, custody, or control of public property or money used or to be used by the state or by any political subdivision and knowingly delivers or causes to be delivered less than all of that property." (Gov. Code, § 12651, subd. (a)(4).) The FCA also "reaches activity colloquially designated as a 'reverse false claim' such that a person will be liable for every misstatement or false record knowingly made, used or caused to be used to conceal, avoid or decrease an obligation of money or property owed to the State or political subdivision." (Center for Law in the Public Interest, Cal. False Claims Act, Section-by-Section Analysis of Draft (1987), pp. 8–9, citing Gov. Code, § 12651, subd. (a)(7).)

[7] Wells Fargo's request for judicial notice of the complaint and order granting summary judgment is granted.

[8] Although the alternate ground for upholding the ruling on the demurrer was not considered by the trial court, the parties have fully briefed the issue in this court. In its opposition brief in the qui tam action, Wells Fargo argued that this action would be barred by a final, adverse judgment in Kuniko's action. Gabriel responded to the argument in his reply brief.

■ All of the requirements for collateral estoppel are met here. In order to prevail in the qui tam action, Gabriel must prove that the bank wrongfully failed to escheat funds in the two accounts. In the related action, Wells Fargo established that there is no evidence sufficient to create a triable issue that the alleged funds were present in the accounts after Hideo's death. This issue was thoroughly litigated and decided in the summary judgment motion. Now that this court has affirmed judgment in the related case, the decision is final and because it was decided in the context of summary judgment, the decision was on the merits. Finally, Gabriel was Kuniko's attorney in the first action. " 'A nonparty should reasonably be expected to be bound if he had in reality contested the prior action even if he did not make a formal appearance. Thus, collateral estoppel has been applied against nonparties who had a propriety or financial interest in and control of, a prior action. [Citations.]' [Citation.] The doctrine is also applicable where the nonparty has such an interest 'in the determination of a question of fact or law with reference to the same subject matter or transaction.' " (*Ceresino v. Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 820 [264 Cal.Rptr. 30].)

Among other cases that support this conclusion is *Lazzarone v. Bank of America, supra*, 181 Cal.App.3d 581. In that case the plaintiff was the beneficiary of a testamentary trust. A bank had been named trustee and for many years oversaw the administration of the trust and filed reports as required with the probate court. The plaintiff received notice of each hearing on the bank's reports and the court approved the reports. In 1982, the assets of the trust were distributed and the bank was discharged as trustee. After the bank was discharged the plaintiff filed suit against the bank alleging negligence and fraud in the management of the trust. (*Id.* at p. 588.) The trial court sustained a demurrer on the ground that the matter was properly heard by the probate court. The appellate court affirmed on a different theory. It held that the court could take notice of the probate records and that "the probate court's orders are conclusive as to Bank's veracity and its exercise of due care." (*Id.* at p. 592.) The similarity to the situation in the present case is apparent.

The trial court properly dismissed the qui tam action because the adverse determination of Kuniko's action conclusively establishes that Gabriel cannot prevail.[9]

---

[9] Because we hold that the demurrer was properly sustained we do not reach the limitations issue that was relied on by the trial court, and we need not address the issues raised in the brief filed by the Attorney General as amicus curiae. Accordingly, the Attorney General's request for judicial notice is denied as the material is irrelevant.

## Disposition

The judgments in both actions are affirmed.

Siggins, J., and Jenkins, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied December 15, 2010, S187149. Baxter, J., and Corrigan, J., did not participate therein.