Filed 11/25/13  Westamerica Bank v. Madjlessi CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| WESTAMERICA BANK, | |
|     Plaintiff and Respondent, | |
| v. | A136084 |
| BIJAN MADJLESSI, | |
|     Defendant and Appellant. | (Sonoma County<br> Super. Ct. No. SCV249030) |

Between 2007 and 2008, Bijan Madjlessi entered into or guaranteed repayment of three loans from Sonoma Valley Bank (SVB).  Following SVB's closure and takeover by the Federal Deposit Insurance Corporation (FDIC), the loans were acquired by Westamerica Bank (Westamerica) in August 2010.  Madjlessi failed to repay those loans or make good on his guaranties, and Westamerica filed suit for breach of contract.  The trial court granted Westamerica's motion for summary judgment.  On appeal from the judgment against him, Madjlessi challenges the evidence submitted by Westamerica in support of its motion and the trial court's rulings admitting that evidence.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Westamerica filed an action against Madjlessi, stating three causes of action for breach of contract.  After Madjlessi answered, Westamerica filed its motion for summary judgment.

In support of the motion, Westamerica submitted the declaration of Scott Power (Power Declaration), its assistant vice president and commercial loan adjustment officer.

1

Pursuant to his knowledge of Westamerica's and SVB's records, his own responsibility for "managing and handling the Loans and documents related to the Loans since they were acquired from the FDIC," and his position as the "authorized custodian of records for the Loans' files," Power testified to the existence of the subject loans and Madjlessi's failure to honor them. Attached as exhibits to Power's declaration were copies of the relevant loan documents.

Specifically, Power declared the following: On January 5, 2007, 132 Village Square, LLC (132 Village Square) executed a promissory note in SVB's favor in the principal amount of $3,345,000.00 (the 132 Village Note). On February 21, 2008, April 23, 2008, June 12, 2008, January 28, 2009, March 26, 2009, June 22, 2009 and September 21, 2009, 132 Village Square executed change in terms agreements regarding the 132 Village Note, which extended the maturity date. On January 5, 2007, Madjlessi executed a commercial guaranty pursuant to which he "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction" of the 132 Village Note. The 132 Village Note provides that an event of default occurs when 132 Village Square fails to make a required payment.

Power further declared: "Pursuant to SVB's loan files, on or about January 5, 2010, 132 Village Square failed to make the required monthly payment due under the 132 Village [Note]. [¶] . . . Since then, 132 Village Square and Madjlessi have repeatedly failed and refused to make the required payments under the 132 Village [Note]. . . . [¶] . . . [¶] The total amount of outstanding principal on [the] 132 Village [Note] is $2,244,998.00 . . . . The total amount of outstanding interest . . . is $293,370.94. The total late fees due on the 132 Village [Note] are $7,700.00. The per diem interest accruing to Westamerica on the 132 Village [Note] is $311.80."

On February 9, 2007, Menlo Oaks Corp. (Menlo Oaks) executed a promissory note in SVB's favor in the principal amount of $200,000.00 (Menlo Oaks Note). On February 9, 2007, and May 27, 2008, Menlo Oaks executed change in terms agreements regarding the Menlo Oaks Note, restating the amount of Menlo Oaks's indebtedness to $100,000.

On February 9, 2007, and May 27, 2008, Madjlessi executed commercial guaranties pursuant to which he "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction" of the Menlo Oaks Note. The Menlo Oaks Note provides that an event of default occurs when Menlo Oaks fails to make a required payment.

Power further declared: "Pursuant to SVB's loan files, on or about November 9, 2008, Menlo Oaks failed to make the required monthly payment due under the Menlo [Oaks] Note. [¶] . . . Since then, Menlo Oaks and Madjlessi have repeatedly failed and refused to make the required payments due under the Menlo [Oaks] Note. [¶] . . . The total amount of outstanding principal on [the] Menlo [Oaks Note] is $100,000.00. The total amount of outstanding interest . . . is $17,466.67. The total late fees due on the Menlo [Oaks Note] are $1,553.33. The per diem interest accruing to Westamerica on the Menlo [Oaks Note] is $16.67."

On May 23, 2008, Madjlessi executed a promissory note in SVB's favor in the principal amount of $1,250,000.00 (the Madjlessi Note). On June 22, 2009, and September 21, 2009, Madjlessi executed change in terms agreements regarding the Madjlessi Note, which extended the maturity date. In August 2010, Madjlessi and SVB entered into a forbearance agreement (the Forbearance Agreement) pursuant to which SVB agreed to forbear from filing a notice of default or otherwise take any further action to realize on any security held by SVB or seek to recover from Madjlessi until December 31, 2010, with regard to the Madjlessi Note. Madjlessi acknowledged the loan made to him by SVB in the Forbearance Agreement. The Madjlessi Note provides that an event of default occurs when Madjlessi fails to make a required payment.

Power further declared: "Pursuant to SVB's loan files, on or about January 1, 2011, Madjlessi failed to make the required monthly payment due under the Madjlessi [Note]. Since then, Madjlessi has repeatedly failed and refused to make the required payments due under the Madjlessi [Note]. [¶] . . . The total amount of outstanding principal on [the] Madjlessi [Note] is $1,250,000.00. The total amount of outstanding interest on [the] Madjlessi [Note] . . . is $240,000.00. The total late fees due on the

3

Madjlessi [Note] are $16,041.67. The per diem interest accruing to Westamerica on the Madjlessi [Note] is $416.66."

Madjlessi opposed Westamerica's motion for summary judgment, but submitted no evidence in support of his opposition. Instead, Madjlessi argued that Westamerica "ha[d] not authenticated any of the Notes," and "mistakenly relie[d] upon the rebuttable presumption" of nonpayment provided by Evidence Code section 635 "as the basis for consideration of the Notes."[1] Madjlessi also submitted evidentiary objections to the Power Declaration and preemptively objected to consideration of any additional evidence Westamerica might offer in reply. Madjlessi's opposition to Westamerica's separate statement of undisputed facts relied entirely upon his evidentiary objections.

Westamerica filed a reply brief and the declaration of Spring Stambaugh (Stambaugh Declaration), a senior Westamerica financial analyst who had been an assistant vice president and finance officer at SVB, and a custodian of records for both banks during the relevant time periods. Westamerica also filed a supplemental declaration from Power, who relied on Westamerica's and SVB's books and records to provide revised calculations of the amounts due.

The trial court granted Westamerica's motion for summary judgment. The trial court overruled all of Madjlessi's evidentiary objections, except for Madjlessi's objection to Power's reference to "information obtained from 'employees that I supervise [or] work with.'" The trial court concluded that Westamerica had established all elements of its causes of action against Madjlessi, and that Madjlessi had failed to provide evidence showing a triable issue of material fact to defeat summary judgment. Judgment was entered against Madjlessi in the amount of $4,298,617.95. Madjlessi filed a timely notice of appeal from the judgment.[2]

---

[1] All further section references are to the Evidence Code unless otherwise indicated. Section 635 provides: "An obligation possessed by the creditor is presumed not to have been paid."

[2] Madjlessi's notice of appeal indicates that the date of the order or judgment appealed was May 29, 2012. This is the date that the order granting summary judgment,

## II.    DISCUSSION

Madjlessi contends the trial court erred in granting summary judgment because Westamerica failed to meet its burden as the moving party.  Specifically, Madjlessi contends that Power failed to authenticate "the very obligations for which [Westamerica] was seeking judgment, and lacking such authentication, [Westamerica] should have been found to have failed to meet its burden of proof."  Madjlessi also complains about the "various calculations of amounts owing" recited in the Power Declaration.  Specifically, Madjlessi contends:  "The Power Declaration truthfully states that [Westamerica] was the assignee of the documents evidencing the various obligations from the [FDIC].  However, the Power Declaration does not state that Mr. Power had ever been an employee of SVB.  Therefore, the Power Declaration cannot satisfy the foundation for the business records exception to the hearsay rule, since he is incapable of offering any evidence regarding the business practices of SVB."  We address each argument in turn.

A.    *Summary Judgment and Standard of Review*

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, fn. 11; accord Code Civ. Proc., § 437c, subd. (c).)  Code of Civil Procedure, section 437c, subdivision (d), provides in relevant part:  "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated [therein.]"  "A plaintiff . . . has met his or her burden of showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to

---

rather than the judgment, was entered.  "An order granting summary judgment is not appealable—it is the later judgment that is appealable. [Citation.]" (*Johnson v. Alameda County Medical Center* (2012) 205 Cal.App.4th 521, 531; accord, Code Civ. Proc., § 904.1, subd. (a)(1).)  However, because Madjlessi's notice of appeal was filed after entry of judgment, we will liberally construe it as an appeal from the judgment. (*Johnson v. Alameda County Medical Center,* at p. 531; Cal. Rules of Court, rule 8.100(a)(2).)

judgment on that cause of action. . . .” (Code Civ. Proc., § 437c, subd. (p)(1).) There is no obligation on the opposing party to show that a triable issue of material fact exists unless and until the moving party has met its burden. (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 743–744.)

“On appeal, we determine de novo whether there is a triable issue of material fact and whether the moving party is entitled to summary judgment as a matter of law. [Citations.]” (*Republic Indemnity Co. v. Schofield* (1996) 47 Cal.App.4th 220, 225.) “ ‘We review the trial court’s decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]’ [Citation.]” (*Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 562.) We resolve any doubts in favor of the party opposing summary judgment and are not bound by the trial court’s reasons for its summary judgment ruling. (*Conte v. Wyeth, Inc.* (2008) 168 Cal.App.4th 89, 97; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.) We will affirm an order granting summary judgment if it was correct on any ground that the parties had an adequate opportunity to address in the trial court. (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120.)

However, we review a trial court’s rulings on evidentiary objections made in connection with a summary judgment motion for abuse of discretion. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.) “ ‘ “The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.” [Citation.]’ [Citation.]” (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1431.)

B.      *Analysis*

We first address Madjlessi’s challenge to Power’s authentication of the loan documents. Madjlessi suggests that Power could not authenticate the loan documents

because he was never an employee of SVB. "Authentication of a writing is required before it may be received in evidence" or "before secondary evidence of its content may be received in evidence." (§ 1401.) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (§ 1400.)

Madjlessi is correct that "[Westamerica] could have offered declarations from former employees of SVB that witnessed the execution of the documents," but he has not cited any authority suggesting that such is required. In fact, the authority is to the contrary. (See §§ 1411 ["[e]xcept as provided by statute, the testimony of a subscribing witness is not required to authenticate a writing"], 1413 ["[a] writing may be authenticated by anyone who saw the writing made or executed, including a subscribing witness"], 1410 ["[n]othing in this article shall be construed to limit the means by which a writing may be authenticated or proved"].) Authentication may be established by circumstantial evidence. (*People v. Valdez* (2011) 201 Cal.App.4th 1429, 1435.) For instance, the contents of documents themselves and their physical location are valid means of authentication. (*People v. Smith* (2009) 179 Cal.App.4th 986, 1001–1002; *People v. Olguin* (1994) 31 Cal.App.4th 1355, 1372–1373.)

Here, it is reasonable to infer that the original loan documents were in SVB's, and then Westamerica's, possession (as the lender). Power specifically declared that "[t]he business records of SVB, including those involving the Loans, were delivered to Westamerica after the purchase and have, since then, been kept in the ordinary course of Westamerica's business." Power declared, under penalty of perjury, that he "ha[s] been responsible for managing and handling the Loans . . . since they were acquired from the FDIC," had reviewed the loan files, and then stated that the attached exhibits were "true

and correct cop[ies]" of the respective loan documents. Madjlessi never suggested, and offered no evidence, that the loan documents were not genuine.[3]

In similar circumstances, the Second District Court of Appeal concluded that the assignee of a promissory note had submitted sufficient evidence to authenticate loan documents when the litigation manager of a third bank, which acted as loan service agent for the assignee, declared that the loan records " '[were] kept and maintained in the ordinary course of business under my supervision and control.' " (*LPP Mortgage, Ltd. v. Bizar* (2005) 126 Cal.App.4th 773, 776–777.) Here, too, Power was the custodian of Westamerica's and SVB's records of the subject loans and, as such, he was competent to establish the authenticity of the loan documents. The trial court did not abuse its discretion in overruling Madjlessi's authentication objections.

We are likewise unpersuaded by Madjlessi's hearsay argument. " 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. . . . Except as provided by law, hearsay evidence is inadmissible." (§ 1200, subds. (a), (b).) One exception to the hearsay rule is for business records. Section 1271 provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶] (b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."

---

[3] And, in fact, one of Madjlessi's other arguments on appeal—in which he argues that the Menlo Oaks Note and the Madjlessi Note were actually lines of credit and, accordingly, section 635 does not apply—presumes that the loan documents attached to the Power Declaration are authentic. (§ 1414 ["[a] writing may be authenticated by evidence that: [¶] (a) The party against whom it is offered has at any time admitted its authenticity; or [¶] (b) The writing has been acted upon as authentic by the party against whom it is offered"].)

Madjlessi contends that *Remington Investments, Inc. v. Hamedani* (1997) 55 Cal.App.4th 1033 (*Remington Investments*) is on " 'all fours' " with this case. *Remington Investments*, like the instant case, concerned the requirements for proving a debt owing to a bank taken over by the FDIC. The failed bank's assets, including the lender's position in a revolving line of credit, were assigned to the plaintiff. The line of credit was evidenced by a document inaccurately entitled "Promissory Note." Despite its title, it was not a promissory note for a specific sum, but rather provided that defendant was liable for all sums which might either be " 'advanced' " to defendant or " 'credited to any of [defendant's] accounts with [the bank].' " (*Id.* at p. 1035.) The promissory note itself did not reveal exactly how much was advanced or how much was repaid. (*Ibid.*) The plaintiff sued the defendant, moved for summary judgment, and offered a copy of a note ledger to show the amount claimed to be owing on the line of credit. To lay a foundation for admission of the note ledger, the plaintiff presented the declaration of its vice-president who declared his familiarity with the plaintiff's records of commercial paper, including the promissory note and the note ledger. He declared that he found the note ledger in the records received from the FDIC. However, the plaintiff presented no evidence of the recordkeeping practices of the failed bank during the period allegedly recorded on the note ledger. There was also no evidence of the manner in which the note ledger was prepared or the origin of the information it contained. (*Id.* at p. 1036.) The trial court sustained the defendant's hearsay objection to the note ledger and denied the plaintiff's summary judgment motion. (*Id.* at pp. 1036–1037.)

On appeal, the Second District Court of Appeal observed that the plaintiff bore the burden of proving the amount defendant owed. The plaintiff "attempted to meet that burden by attempting to prove the content of the bank's records through an offer of the [n]ote [l]edger. The [n]ote [l]edger was hearsay, and its offer into evidence raised the question of its admissibility to prove the truth of its contents. . . . [¶] . . . [¶] . . . The [n]ote [l]edger was claimed to record advances, payments, interest accruals, etc. It was submitted to prove the factual accuracy of the periodic events it allegedly recorded. It was therefore not admissible over a hearsay objection unless supported by the foundation

9

specified in Evidence Code section 1271 . . . ." (*Remington Investments, supra,* 55 Cal.App.4th at pp. 1038–1039, 1043.)

Here, too, the Power Declaration, in stating the amounts due under each note, offered the contents of out-of-court statements for their truth. There was no note ledger before the court, but it appears that Power merely restated the contents of bank documents showing amounts paid, balances, and interest accrued on the notes. The contents of the documents not before the court were hearsay. (§ 1200.) Arguably the Power Declaration did not establish the foundation for the business records exception because it did not identify the documents relied upon, much less establish the time and circumstances of the documents' creation. (§ 1271.) (But see *People v. Lugashi* (1988) 205 Cal.App.3d 632, 642 [bank computer records admitted without specific testimony regarding the method of preparation]; *People v. Dorsey* (1974) 43 Cal.App.3d 953, 960 ["we believe that bank statements prepared in the regular course of banking business and in accordance with banking regulations are in a different category than the ordinary business and financial records of a private enterprise"].)

We need not decide whether the Power Declaration standing alone establishes the foundation necessary for the business records exception because the Stambaugh Declaration unquestionably does. Stambaugh, a former SVB employee, clearly stated: "I worked with and on SVB's books and records and know that they were made and created by persons with knowledge of the relevant facts at or near the time of the transactions reflected in the books and records. SVB's books and records, including all documents related to its loans, were maintained by SVB in the ordinary course of business. [¶] . . . When loan documents were prepared and signed for a loan at SVB, the documents were immediately thereafter placed into a computerized reporting system. . . . The loan transactions were also recorded, and thereafter processed, in a computerized accounting system called Fiserv CBS . . . . The CBS was used in the ordinary course of SVB's business to record and account for payments and disbursements of loans and other loan-related business transactions, including accounting for interest and fees due. [¶] . . . [Westamerica] received from the FDIC SVB's books, records and computer systems,

including the CBS. . . . [¶] . . . I have worked with and on [Westamerica's] books and records and know that they were made and created by persons with knowledge of the relevant facts at or near the time of the transactions reflected in [Westamerica's] books and records. [Westamerica's] books and records were and are maintained by [Westamerica] in the ordinary course of its business. [¶] . . . SVB's books and records . . . have been incorporated into and are now part of [Westamerica's] books and records maintained by [Westamerica] in the ordinary course of business."

Madjlessi does not argue that the Stambaugh Declaration fails to satisfy the requirements of section 1271. Nor does he continue to assert a best-evidence rule objection because the underlying bank records were not offered into evidence.[4] Instead, Madjlessi maintains that the trial court should have stricken Stambaugh's Declaration as untimely. A party moving for summary judgment generally may not submit new evidence on reply. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315.) However, "the trial court's consideration of such additional evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material." (*Plenger v. Alza Corp.* (1992) 11 Cal.App.4th 349, 362, fn. 8 [trial court had discretion to consider new evidence in summary judgment reply papers when plaintiffs did not object to the new evidence, did not request a continuance, or suggest that additional evidence could be presented]; see also *Alliant Ins. Services, Inc. v. Gaddy* (2008) 159 Cal.App.4th 1292, 1308 [trial court did not abuse discretion to consider new evidence in preliminary injunction reply papers when defendant had opportunity to testify at hearing].)

---

[4] Madjlessi does refer to the best evidence rule in passing, but he has forfeited the argument by failing to include reasoned analysis and a separate heading in his opening brief. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [if no legal argument with citation to authority " 'is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "]; *300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1257 [argument not set forth under separate heading may be disregarded].)

Here, the supplemental Power declaration and the Stambaugh Declaration were filed and served on April 27, 2012.  The hearing on the motion for summary judgment occurred approximately two weeks later, on May 12, 2012.  At the hearing, despite his preemptive objection to any additional evidence Westamerica might offer in reply, Madjlessi did not request any further opportunity to respond to these declarations.  Likely this was because the Stambaugh Declaration did not really present any "new" evidence in support of the motion.  Rather, the Stambaugh Declaration merely sought to fill the foundational gaps from the original Power Declaration.  Madjlessi was on notice, from the time the moving papers were filed, on September 2, 2011, that the amount he owed was at issue.  Nonetheless, Madjlessi never filed a declaration, nor did he request additional time to submit a declaration or other evidence, disputing Westamerica's calculations.  For these reasons, the trial court did not abuse its discretion in considering the declarations submitted with Westamerica's reply.

Finally, we reject Madjlessi's contention that the loan documents themselves are hearsay.  The sustained hearsay objection, in *Remington Investments*, was to the note ledger only.  (*Remington Investments, supra,* 55 Cal.App.4th at pp. 1036–1037, 1042.)  As the *Remington Investments* court observed:  "The [p]romissory [n]ote document itself is not a business record as that term is used in the law of hearsay, but rather is an operative contractual document admissible merely upon adequate evidence of authenticity.  Sufficient evidence of authenticity to support admission of the [p]romissory [n]ote document could be supplied by numerous means, at least some of which would likely be available even to the FDIC or its assignees.  (See . . . § 1400 et seq.)" (*Remington Investments,* at p. 1042.)  The trial court did not abuse its discretion in overruling Madjlessi's hearsay objections.[5]

---

[5] Given our resolution of the authentication and hearsay issues, we need not resort to section 635 or address Madjlessi's argument that it does not apply.

The evidence properly considered by the trial court in support of Westamerica's motion for summary judgment established that there was no triable issue of material fact and that Westamerica was entitled to judgment as a matter of law.

### III. DISPOSITION

The judgment is affirmed.  Westamerica is entitled to its costs on appeal.


_____

Bruiniers, J.


We concur:


_____

Jones, P. J.


_____

Simons, J.

13