Filed 11/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| HERMAN YEE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>PANROX INTERNATIONAL (USA), INC.,<br><br>    Defendant and Appellant;<br><br>ANN HON,<br><br>    Defendant and Respondent. | B321037<br><br>Los Angeles County<br>Super. Ct. No. KC068890 |

APPEAL from an order of the Superior Court of Los Angeles County, Peter Hernandez, Judge. Affirmed.

Eric M. Schiffer and Ronald P. Slates for Defendant and Appellant.

Goldstein, Gellman, Melbostad, Harris & McSparran, Brian E. Soriano and Vladie P. Viltman for Plaintiff and Respondent Herman Yee.

Law Offices of Julia Sylva and Julia Sylva; Acker & Whipple, Stephen Acker for Defendant and Respondent Ann Hon.

_____

Ann Hon and Herman Yee worked together in Hon's company, but they sued each other when their relationship ended. Their litigation turned up a lien on one of their homes—a lien in favor of a long-suspended corporation called Panrox International (USA), Inc. A third-party attorney heard about the lien, revived Panrox, and entered the litigation between Hon and Yee, claiming Hon and Yee owed Panrox $141,000 from a *1995* debt. Hon and Yee said their debt to Panrox was resolved in *1999*. In *2022*, the trial court ruled for Hon and Yee. Panrox appealed. We affirm. The Panrox debt was settled 24 years ago.

## I

We journey back in time.

## A

In the early 1990s, Hon and Yee developed a personal relationship. Hon owned a small clothing business called ANC Apparel Inc. that imported from China. Yee began helping Hon run ANC. The two explored business possibilities with Panrox, which was a subsidiary of a company in China.

In 1995, ANC and Panrox agreed on a business deal. The financing would involve two homes Hon and Yee owned. We explain about these two houses, which are at the heart of the case.

In 1993, Hon bought a home in San Francisco. In 1994, Hon and Yee moved from San Francisco to Los Angeles, but Hon kept her San Francisco house. Yee bought a home in Los Angeles County, where he and Hon lived from 1994 to 2007. Yee added Hon's name to the title of his Los Angeles home in 2002.

2

On April 20, 1995, Hon, Yee, and Panrox wrote out a plan for the Panrox/ANC business relationship. This document, written in Chinese, has a title translated as "BUSINESS COOPERATION OF JEAN APPAREL MANUFACTURE CONTRACT." By referring to "monthly sample orders and purchase orders," this document seemed to envision an ongoing relationship between Panrox and ANC: Panrox would manufacture apparel in China and ANC would be its U.S. sales agent.

On June 1, 1995, ANC and Panrox made their arrangement concrete. ANC and Panrox signed a sales contract for 12,000 denim jackets: 3,000 each of four different styles. The payment terms were these: *in return for mortgages on two houses for $141,000*, Panrox agreed to manufacture 12,000 jackets and to ship them from China to California. The signature for Panrox appears to be by one Benjamin Yang, who also appears in our record as Benjamin Biao Yang, or Biao Yang. In the 1990s, Yang was a director and the secretary for Panrox.

This $141,000 figure appears repeatedly in our record, as will appear.

Following this June 1, 1995 contract, Yee and Hon signed a separate personal guaranty promising to pay the $141,000. Their guaranty stated Yee's and Hon's $141,000 debt would be secured via a deed of trust. The date on this guaranty was August 3, 1995.

On this same date, Yee gave Panrox a deed of trust to his *Los Angeles* house to secure the $141,000 debt. This deed listed Panrox as beneficiary, Yee as trustor, and a title company as trustee.

3

On the same day and for the same purpose, Hon gave Panrox a deed of trust to her *San Francisco* house. The San Francisco deed, also in the sum of $141,000, listed Panrox as beneficiary, Hon as trustor, and the same title company as trustee.

Panrox argues to us, without contradiction, that deeds against both properties were necessary because neither property had enough equity to cover the $141,000 debt.

Later in 1995, Panrox recorded both deeds as liens against the respective houses.

It will become significant that the San Francisco deed bore a recording date of October 10, 1995 and a recording number of 95-F867388. This date and number would identify this recorded deed with particularity.

Panrox delivered the 12,000 jackets in October 1995. ANC defaulted on the $141,000 payment. Panrox swiftly took action against Hon and Yee: on November 16, 1995, it executed a notice of default and election to sell under the deed of trust against Hon's San Francisco house. Biao Yang signed this document as Secretary of Panrox. This was the first step in Panrox's non-judicial foreclosure against Hon's San Francisco house. Represented by attorney Ronald Slates, Panrox sent a settlement letter to Hon's attorney on February 5, 1996. This letter did not trigger a settlement.

Hon and Yee took the offensive against Panrox. They went to court to stop its foreclosure efforts.

Hon sued Panrox in San Francisco Superior Court on February 13, 1996. This suit alleged Panrox had breached the underlying contract by using "illegal employees" and "undocumented workers" in violation of United States laws.

4

Hon's San Francisco complaint sought to block the foreclosure sale of her San Francisco house.

One day later, Yee likewise sued Panrox in state court. Yee decided to sue in Los Angeles. This case number was KC022178. It appears the parties gave the trial court a copy of this complaint, which seems to have been omitted from our record.

Panrox filed separate cross-complaints in the San Francisco and Los Angeles actions on April 4, 1996. These cross-complaints named the $141,000 debt and sought payment as well as judicial foreclosure.

Panrox's attorney Slates substituted out in May 1996. Different attorneys began representing Panrox. Slates then disappeared from this matter for a quarter of a century. As we shall see, he would reappear in 2021.

We return to the 1990s. On July 29, 1998, California's Chief Justice coordinated the San Francisco and the Los Angeles actions and assigned them both to the Los Angeles Superior Court.

What happened after the two cases were coordinated and sent to Los Angeles? After all this time, the evidence is elliptical. By 2022, the official court file for case KC022178 had gone missing. In 2022, the archive department responded to the trial court's file inquiry as follows: "FILE MISSING/UNABLE TO LOCATE."

The sole official source of information we have about the fate of this case KC022178 is the Los Angeles Superior Court's online Register Of Actions, which summarizes some data but is not a comprehensive explanation of the litigation's progress.

This online source lists case KC022178 as *dismissed* on December 1, 1999.

By way of explanation, this source also has, with our bold italics, the following entries from late 1999:

- 07/08/1999 at 08:30 am in Department G, Jaeger, Karl W., Presiding. Motion Hearing (TRIAL SETTING CONFERENCE 8:30am PLAINTIFF'S COST MOTION 8:30am) - ***Case Deemed Settled at Settle Conf***
- 07/21/1999 at 09:00 am in Department G, Jaeger, Karl W., Presiding. ***Jury Trial - Vacated***
- 08/05/1999 at 08:30 am in Department G, Jaeger, Karl W., Presiding. ***Motion Hearing - Vacated***
- 12/03/1999 at 11:00 am in Department G, Jaeger, Karl W., Presiding. OSC-Failure to File Dism. or Judg. - ***Matter Placed Off Calendar***

According to this concise and official court record, then, case KC022178 was "deemed settled" in July 1999, and the court vacated all further proceedings and dismissed the case on December 1, 1999.

After the July 1999 settlement date, Panrox executed two documents. Both related to the San Francisco house alone. Neither mentioned the Los Angeles house.

The first was "SUBSTITUTION OF TRUSTEE BY BENEFICIARY" for the San Francisco house. This form made Panrox the new trustee, taking over for the original title company trustee.

The second document was a "DEED OF FULL RECONVEYANCE." The deed states that all sums secured by the deed of trust on the San Francisco house "have been fully paid . . . ."

6

Both documents were notarized on November 4, 1999 and signed by Benjamin Biao Yang on behalf of Panrox. Both referred to the deed dated October 10, 1995 and numbered F867388, which was the document creating the lien against Hon's San Francisco house. Both documents were recorded on February 6, 2001.

Nothing was recorded, however, to affect Panrox's lien on the *Los Angeles* home. From every indication in our record, this lien was forgotten, and would remain forgotten until 2020.

Panrox ceased operation in about 1998. The State of California suspended Panrox on January 2, 2001 for failure to pay taxes. Panrox would remain suspended for 20 years, until Slates revived it in 2021. ANC was dissolved in early 1999.

Thus began a long period of stillness. Panrox was suspended; ANC was dissolved; no one took notice of the Los Angeles lien, and for many years the record contains no events pertaining to the $141,000. The $141,000 topic would resurface only as an unexpected byproduct of Hon's and Yee's acrimonious rupture.

B

Hon and Yee ended their personal and business relationship in 2007. This split was final and total. Yee moved out of the Los Angeles house. Hon stayed there.

After 2007, Hon and Yee took to suing each other, but their court warfare did not move swiftly.

On June 19, 2008, Hon sued Yee in case KC053203, seeking partition by sale of the Los Angeles house. This case moved to default judgment, but the court vacated the judgment on December 31, 2009.

On November 23, *2016*, Yee sued Hon in case KC068890, seeking relief including the partition of the Los Angeles house.

In *2020*, the court in case KC068890 conducted a bench trial. On August 20, 2020, the court split the Los Angeles house value evenly between Yee on one hand and Hon (and her son) on the other.

To sell the Los Angeles house and to divide the proceeds, the court appointed a referee, who ordered a title report. On November 3, 2020, this report revealed the long-dormant $141,000 Panrox lien on the Los Angeles property.

For a reason not plain on the record, Hon's attorney Julia Sylva searched out attorney Ronald Slates, who had been Panrox's counsel before the July *1999* settlement. On May 3, *2021*, Sylva informed Slates of Panrox's lien on the Los Angeles house. Why did Sylva do this? Yee's attorney argues Sylva's motive was "to disrupt the imminent partition sale her clients [Hon and her son] were facing." Hon and Panrox do not comment on this argument or give a different explanation of Sylva's reason for alerting Slates to the lien. Sylva's client Hon, however, now is *adverse* to Slates's client Panrox. Hon's position in this appeal is that the Panrox deed secures a debt that has been satisfied and the trial court was right to invalidate Panrox's lien.

After learning about the Los Angeles lien from Sylva, Slates revived Panrox for the limited purpose of prosecuting the case in favor of Panrox's Los Angeles lien.

Slates tracked down Aihua Xia, who had worked for Panrox in the 1990s but who left Panrox in 1998. Through Slates's efforts, Xia became Chief Executive Officer in 2021 of the revived and limited-purpose Panrox. Xia also became Chief Financial Officer, Secretary, Agent for Service of Process, and "the Director

of Panrox." The corporate statement of information filed with the California Secretary of State lists Panrox's principal office and address as Slates's law firm. This 2021 filing lists no names affiliated with the revived Panrox other than Slates and Xia.

Today, Panrox apparently consists only of Slates and Xia. Panrox's current activities are confined to pursuing the Los Angeles lien.

C

On October 1, 2021, the trial court set a briefing schedule to resolve the validity of the Los Angeles lien. There is no sign Panrox objected to this briefing plan.

On October 28, 2021, Panrox filed its motion to confirm the validity of its Los Angeles lien. Panrox argued its Los Angeles deed remained valid and, with interest, entitled it to a payment of $514,746.58 upon sale of the Los Angeles house. Panrox's motion also argued there was no evidence the debt of $141,000 ever had been paid, and that the deed of reconveyance on the San Francisco house was improperly executed and therefore void.

Panrox's motion did *not* object that the trial court had behaved unfairly by placing the burden of proof on Panrox. Nor did Panrox's motion mention anything about summary judgment, or about how some other procedure might be preferable to the motion the court had ordered.

After filing its motion, Panrox conducted further discovery. On October 14, 2021 and again on December 14, 2021, Panrox deposed Hon. Before the depositions, Hon's attorney Sylva told Slates that Hon "has no recollection of the business details of over twenty years ago and she has no documents as you request."

At her depositions, Hon testified she did not know if anyone had paid $141,000 or any amount to Panrox. She had "no idea at

9

all." Hon did not know if Yee had made any payment to Panrox. In her second deposition, Hon testified she was "not too sure" if she had signed a settlement agreement with Panrox.

On December 15, 2021, Panrox deposed Benjamin Biao Yang. Yang testified he signed the Substitution of Trustee form and the Deed of Full Reconveyance on November 4, 1999 at the direction of one Yoming Sung, who was chairman of Panrox International and of other firms Yang termed the "stock controlled companies in Shanghai called Shen Shi." Yang said the "mother company" of Panrox International was located in Shanghai, and Yang's only contact was with the Shanghai headquarters: Yang had no contact with ANC. Yang said Yoming Sung told Yang the "headquarter company" had a dedicated law firm based in Shanghai that would "totally take care of this matter." Yang did not participate in resolving the ANC dispute at arbitration; that was handled by counsel representing Panrox's "mother company" and its counsel. Yang did not know the settlement terms because the "mother company" and its attorney handled the settlement. All Yang did was sign documents "prepared by the representing counsel of the Panrox over there in Shanghai."

Attorney Slates asked Yang, "who were the witnesses at the arbitration?" Yang answered, "I don't know. You need to ask the mother company of Panrox who [were] representing that company at that time."

The record contains no other information about this supposed arbitration.

Slates also asked Yang the following: "What were the specific terms under which this settlement about which you are speaking occurred? What were the terms? What was each party

10

supposed to do or not do?" Yang answered: "That I don't know because that was totally handled by the mother company of Panrox and their representing attorney. Therefore, I don't know."

Yang also testified in his 2021 deposition that he had trouble remembering events from 1999 "because that was such a long time ago." Yang did not remember the name or contact information for Panrox's Shanghai counsel.

In December 2021 and January 2022, Panrox replied to Hon's and Yee's oppositions and filed excerpts of these depositions with the trial court.

D

On April 12, 2022, the trial court denied Panrox's lien motion. The court's thorough written order recited the facts and procedural history but mentioned nothing about a Panrox objection that the briefing unfairly placed the burden of proof on Panrox.

The court determined Panrox's motion lacked merit. The court quoted Evidence Code section 1603, which makes a recorded deed prima facie evidence that the interest described in the deed was conveyed to the deed's grantee and which explains this presumption affects the burden of proof.

The trial court noted Panrox's contentions: that the $141,000 had not been paid and there had never been a final settlement.

The court rejected both contentions. It concluded the annotations in the court's Register of Actions showed there had been a settlement. The court reasoned three kinds of evidence corroborated this conclusion: the Substitution of Trustee by Beneficiary; the Deed of Full Reconveyance; and Yang's

11

testimony about his authority from Panrox to sign these documents. The court stated it was placing greater weight on the testimony of Yang than Xia because Xia lacked personal knowledge of the circumstances surrounding the execution of these recorded documents.

The court rejected Panrox's attack on the legal validity of the Substitution of Trustee by Beneficiary and the Deed of Full Reconveyance, observing Panrox's attack applied equally to Panrox's deed to the Los Angeles house. That is, this Panrox argument proved too much: if accepted, it would destroy Panrox's own case.

The court also ruled against Panrox on the alternate ground that Panrox had abandoned its interest in the Los Angeles house because, over 20 years ago, it had stopped pursuing its interest in the house.

Panrox appealed this adverse order.

## II

The trial court was right on the law and right on the facts.

## A

The standard of review is in controversy. Panrox urges independent review, while Yee argues for deferential review.

No cited case squarely settles this issue.

As authority for independent review, Panrox cites only *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888. This precedent is afield: it addressed taxation classification. (*Id.* at p. 884.)

Hon's brief skips the standard of review.

Yee's brief argues for deferential review. It says the trial court proceeding was a partition action, which is equitable in character, which dictates deferential review. To this, Panrox

12

replies the analysis of its Los Angeles lien was not an equitable balancing but rather a determination based on "legal principles and their underlying values."  Panrox's reply has merit.

Lacking specific cited precedent, we therefore recur to basics:  we defer to the trial court's weighing of the facts, and we independently review its legal analyses.

B

Panrox's first claim of error is that the trial court erroneously shifted the burden of proof to Panrox by ordering it to file a motion demonstrating the validity of its Los Angeles deed of trust.  Panrox forfeited this objection by failing to raise it in the trial court.  Had Panrox made this objection, the trial court could have addressed the issue and, if need be, rectified the problem on the spot.  It is detrimental for parties to store up secret objections they deploy only if they lose and, after much cost and delay, appeal.

Similarly, Panrox in a footnote complains the trial court never afforded it the opportunity "to present a summary judgment motion or some other procedural vehicle that would have properly shifted the burden of proof to Respondents Hon and Yee after Panrox made its initial showing."  Panrox forfeited this argument by failing to present it to the trial court.

Moreover, the trial court did in substance what Panrox now urges:  the court applied law favoring the prima facie validity of Panrox's Los Angeles lien, and then shifted the burden to Hon and Yee after Panrox made its initial showing.  That is, the court quoted Evidence Code 1603 as establishing prima facie evidence the property named in a recorded deed, or the interest described, has been transferred to the grantee named in the deed.  The court ruled, however, this prima facie presumption was overcome

13

by Hon's and Yee's evidence from the Register of Actions, which suggested Panrox settled its case against Hon and Yee about the $141,000. The trial court found corroborating evidence in Yang's creation, at Panrox's behest, of the two documents about the San Francisco house that Yang signed in 1999.

This analysis was eminently reasonable. Whether we review this analysis independently or with deference makes no difference, for our conclusion is the same: the court's conclusion accords with the law and common sense.

The superior court's online record was cryptic but impartial. This unbiased record states Panrox, Hon, and Yee settled their litigation in July of 1999. Panrox has not explained away this evidence. The trial court rightly gave this factor powerful weight.

Moreover, actions after this July 1999 notation are fully consistent with a settlement. The court vacated the jury trial and dismissed the case, which remained dismissed. In other words, the parties to the cases acted as though all their coordinated complaints and cross-complaints indeed were fully settled and completely concluded.

There is more. Particularly telling is Yang's deed of full reconveyance, which Yang created *after* the settlement date. This document recites all secured sums "have been fully paid." The secured sum was the $141,000.

This recorded document, *created by Panrox*, is decisive proof the $141,000 debt was—in Panrox's contemporaneous estimation—fully satisfied. There is no other reason Panrox would create and record a document so completely counter to its own interest in getting the $141,000.

This decisive proof mooted the Los Angeles lien completely. The original debt was for $141,000, but Panrox had demanded *two* liens for that sum. The San Francisco deed of "full" reconveyance meant the $141,000 had been fully satisfied. The Los Angeles lien did not matter anymore, except as litter in a title chain.

It is true this deed of full reconveyance is as to the San Francisco house only, and there is no similar reconveyance deed as to the Los Angeles house.

The simple explanation is neglect: someone dropped the ball. Someone forgot to follow through on the settlement by filing a parallel negation of the lien on the Los Angeles house. Trial judges of experience routinely see these kinds of omissions by lawyers, because everyone makes mistakes. (Judges of course are no exception.) A mistake is the best explanation for the persistence of the long-outstanding but long-ago satisfied Panrox lien on the Los Angeles house.

Panrox protests there is no *other* evidence it got paid the $141,000. It certainly is true that no one in 2020 found a signed settlement document, a receipt, or some document of that kind from 1999. And Hon cannot remember anything useful about the affair except that she did not pay the $141,000 and she has no evidence to offer on this score.

This is a problem with litigating about events from decades ago: memories fade, people die, corporations dissolve, businesses fail, files are sent to storage and then to landfill, and evidence disappears. Grain by grain, time buries the past. As the poet said, the lone and level sands stretch far away.

At this late date, we cannot learn about this July 1999 settlement. For reasons the parties do not disclose, no one

deposed Yee or offered his declaration.  We do not know who negotiated this settlement, or if the negotiators were lawyers, or if it was an arbitration, or in what country the participants worked and lived, or whether they are still alive, or anything about one Yoming Sung who at one time might have run things from Shanghai.  There is so much we do not know.  What we do know points to one conclusion:  the trial court was right to deduce the parties satisfied the $141,000 debt in 1999.

Panrox cites Evidence Code section 635, which states that an obligation possessed by the creditor is presumed not to have been paid.  This presumption is rebuttable.  (*Gabriel v. Wells Fargo Bank* (2010) 188 Cal.App.4th 547, 555.)  The trial court properly found the evidence rebutted it.

In the same vein, Panrox insists the defense of payment is affirmative and must be established by evidence.  So it was:  the record of settlement and Yang's deed of full reconveyance established this defense.  When Panrox insists "neither Yee nor Hon could offer any evidence of payment or other satisfaction of the underlying debt," Panrox slights the decisive evidence that convinced the trial court and that convinces us and all objective observers.  Besides completing a settlement that satisfied Panrox's demand, what other motive could Yang possibly have had to create a deed of full reconveyance—a document so contrary to Panrox's interest at the time?  Panrox is silent on this point, and its silence devastates its argument.

Panrox's opening brief contains a separate section asserting that the purported settlement did not prove payment of the underlying obligation, but this argument recapitulates the already-identified infirmities of Panrox's contentions.

16

In another footnote, Panrox suggests the deed of full reconveyance was void for several reasons. These reasons are insubstantial.

First, Panrox argues, without cited authority, that a suspended corporation cannot transfer property. Yang notarized the deed of full reconveyance on November 4, 1999. Panrox was suspended on January 2, 2001. Panrox created this deed *before* it was suspended. That fact ruins this argument.

Second, Panrox argues Yang lacked corporate authority to create this deed. But Yang testified the head of Panrox's Chinese parent company directed him to take these actions. No evidence impeached Yang's testimony.

Third, Panrox faults the deed of full reconveyance for lacking a corporate seal. Yee points out Panrox's original lien also lacked a corporate seal. In other words, Panrox's argument, if taken seriously, would overthrow its own case. Panrox's reply brief does not attempt to answer Yee on this point.

We do not reach the trial court's alternative holding that Panrox had abandoned the litigation against Hon and Yee.

## DISPOSITION

We affirm the order denying Panrox's motion, award costs to Yee and Hon, and remand for further proceedings.


WILEY, J.

We concur:


GRIMES, Acting P. J.          VIRAMONTES, J.


17